DOHERTY, *Appellant*, v. NOBLE *et al.*

Division One, March 9, 1897.

1. **Setting Aside Deed**: UNDUE INFLUENCE. Where the grantor, although an aged and infirm woman, makes a deed without any suggestion from the grantee and entirely voluntarily, it can not be set aside simply because she may afterward regret her action.

2. **Undue Influence**: VOLUNTARY CONVEYANCE BY PARENT TO CHILD. There is no presumption against a voluntary conveyance from a parent to a child, and the court will hold the relations between a grandmother and a granddaughter as that of parent and child, if the grandmother has raised the grandchild, and often stated she intended to provide for her as a child, and there has always existed the tenderest relations between them.

3. ———: ———: BURDEN OF PROOF. Where the relation of parent and child exists, the burden of proof is on the plaintiff to prove undue influence in the making of a voluntary conveyance.

4. **Appellate Practice**: LOSS OF EVIDENCE IN EQUITY CASE. Where appellant's abstract shows that part of the evidence at the trial has been lost, and is not in the bill of exceptions, this court will presume the trial court decided the cause correctly, and will affirm the judgment.

*Appeal from Jasper Circuit Court.*—HON. W. M. ROBINSON, Judge.

AFFIRMED.

*McReynolds & Halliburton* and *Cunningham & Dolan* for appellant.

(1) Where a person is so situated as to exercise a controlling influence over the will and conduct of another, the clearest evidence is required that there was no fraud, influence or mistake. *Harvey v. Sullens*, 46 Mo. 152; *Cadwallader v. West*, 48 Mo. 483; *Armstrong v. Logan*, 115 Mo. 465. (2) A voluntary conveyance from

a grandmother to her granddaughter will be set aside when it is shown that the granddaughter exercised a controlling influence over the grandmother, and there was no deliberate, unbiased intention on the part of the grantor to make the deed. 2 Pomeroy's Equity Jurisprudence [2 Ed.], sec. 962; *Cadwallader v. West*, 48 Mo. 483.

*Ayres & Jones* and *Thomas & Hackney* for respondents.

(1) Respondent's motion to dismiss the appeal should be sustained. Six depositions and three deeds introduced in evidence, all material to the issues and necessary for a review by this court of the judgment of the trial court, are omitted by appellant from her abstract. Appellant's abstract of the record must, in equity cases, set forth all the evidence. This duty devolves on appellant and can not be shifted to the respondent. This court will, on motion of respondent in such case, dismiss the appeal. *Garrett v. Coal Co.*, 111 Mo. 279; *Brand v. Cannon*, 118 Mo. 595. (2) The appellant's abstract of the record does not show what, if any, final judgment was rendered by the circuit court. This is an additional reason for the dismissal of the appeal. *Mills v. McDaniels*, 59 Mo. App. 334, and cases cited. (3) The evidence fails to show that there was any undue influence exerted by Mrs. Noble, or her husband, or by Mr. Clodfelter, to procure the conveyance sought to be set aside. The deed, reserving as it did, a life estate, would not under such circumstances, be set aside as effected by undue influence. *Bowles v. Wathan*, 54 Mo. 261. (4) The evidence of Mrs. Noble, of her husband, Dr. Thos. B. Noble; of Mr. Clodfelter, plaintiff's attorney; of the notary, Edward Schwab, and of Dr. W. C. Rank, a friend of

Dr. Noble, who called at his house at the time the deeds were being made out, and who was well acquainted with Mrs. Doherty, all shows that Mrs. Doherty signed the deed and knew all about it, and talked about it, explaining to Schwab and to Dr. Rank the fact that it was mineral land, etc., and that she was giving to Mrs. Noble, whom she had always treated as her child, a deed for her share of the property which she intended her to have the benefit of at her death. (5) The rule applicable to gifts from parent to child must be applied in this case for the reason that all the evidence shows plaintiff so treated and considered Mrs. Noble. The rule is, that the mere relation of parent and child is not sufficient to justify a conveyance from parent to child being set aside, without showing the exercise of some undue influence or the existence of fraud, or that some advantage had been taken by the child of the parent's weak or helpless condition. The rule applicable to gifts, etc., obtained by attorney from client, spiritual adviser from advisee, trustee from *cestui que trust*, parent from child, guardian from ward, does not apply to gifts, etc., from parent to child. *McKinney v. Hensley*, 74 Mo. 332. (6) That plaintiff was very greatly attached to defendant, Florence, from her infancy up to the time of the commencement of this suit, and that Florence exercised the usual influence of a kind and devoted daughter toward an aged and respected mother is not denied by defendants; but this influence is commendable rather than reprehensible, and supports instead of militating against the validity of the gift. *Jackson v. Hardin*, 83 Mo. 185. The conveyance in question is fair, equitable and just, and even if it could be held to have been procured by an influence undue in its nature, a court of equity would not under such circumstances set the conveyance aside. *Turner v. Turner*, 44 Mo. *loc. cit.* 537; *Cruger v. Doug-*

*las*, 4 Edw. Ch. 433; *Moore v. Moore*, 67 Mo. *loc. cit.* 197. The fact that the execution of the deed is in line with a purpose previously entertained by the grantor, evidenced by her will, evidenced by her deed to other property and by her declarations oft repeated to the members of her family and friends, and that its effect is simply to carry out an agreement previously made between the parties, negatives alleged fraud on the part of the grantee or others in securing its execution. *Brennan v. Zehner*, 97 Mich. 98.

MACFARLANE, J.—This is a suit in equity to set aside a quitclaim deed dated December 14, 1891, made by plaintiff in consideration of love and affection, whereby she conveyed to defendant, Florence E. Noble, one undivided one third of four fifths of a tract of mineral land in Jasper county, Missouri. By the deed the grantor retained a life estate in the land.

The petition charged that said defendant was the granddaughter of plaintiff, by whom she was raised from infancy, and had been educated. That she is twenty-two years of age, intelligent, and well educated.

That plaintiff is seventy-five years old, and is very weak and infirm, and mentally incapable of looking after her business affairs; that she is illiterate, and can barely write her own name, and has never had any experience or knowledge of business matters; that for the past few years she has been in feeble health and weak in mind, and has intrusted all her business matters to her two sons, Mat and Marshall Doherty, especially in litigation with other parties over this same land.

That defendant Thomas Noble, the husband of defendant Florence, is a well educated man and a physician by profession, and in the absence of her said two sons, defendants controlled plaintiff in business matters, and by their relationship to her and

their close associations, they possessed an undue influence over her. .

That plaintiff resided in Crawfordsville, Indiana, and defendants, since their marriage, in Cincinnati, Ohio.

That one Clodfelter, of Crawfordsville, was the attorney for .plaintiff in the former litigation. That shortly after the trial of said cases in Missouri plaintiff was taken to the home of defendants in Cincinnati, where her said attorney, Clodfelter, met her, and by the undue influence and threats of said Clodfelter and defendants she was induced to execute and deliver the deed in question.

The answer, after denying generally the allegations of the petition, charges, affirmatively, that plaintiffs, by and through the advice of her two said sons, agreed to ratify and confirm the said conveyance if defendants would cancel a certain prior conveyance of the said plaintiff to defendant Florence E. Noble. That defendants did cancel such conveyance, and thereby surrendered to plaintiff valuable property, and plaintiff then and there fully and freely confirmed and ratified the deed in question.

It was shown upon the trial that at the time of the execution of the deed plaintiff was a widow about seventy-three years of age; that defendant Florence was her grandchild, whom she had raised from her infancy and educated. Previous to this disagreement the relationship of plaintiff and said defendant had been as that of parent and child. Declarations of plaintiff, often repeated, were shown, whereby she had announced her intention of treating said defendant as a child in the disposition of her property. Their relationship was very affectionate and confiding.

Plaintiff had two sons, Mat and Marshall, who advised and generally controlled her in business matters.

She also had other grandchildren, brothers and sisters of said defendant.

Said defendant was an intelligent and fairly well educated young woman about twenty-two years of age. She lived with plaintiff at Crawfordsville until her marriage, a year or two before the transaction complained of, when she moved with her husband to Cincinnati, where he was then attending medical college.

Plaintiff owned a home in Crawfordsville, valued at about $6,000, and the property in this litigation. This last named property seems to have been in litigation with other claimants, and had been decided favorably to plaintiff by the circuit court, but an appeal had been taken to the supreme court by the opposing party.

Previous to the death of her husband in January, 1890, plaintiff had made a will by which she had devised to defendant Florence one third of all her property, and to the children of her two sons the remaining two thirds.

After the death of her husband she had made a new will by which she also gave said defendant one third of all her property.

Shortly before the execution of the disputed deed plaintiff had executed to defendant another deed whereby she conveyed to her one third of the Crawfordsville property, reserving to herself the life estate.

As before stated, Clodfelter was the attorney of plaintiff in the pending litigation over this Missouri land. He met plaintiff at the home of defendants with the view of making a settlement for legal services rendered. This interview resulted in plaintiff making him a deed to the undivided one fifth of this property. While this deed was absolute on its face, it seems only to have been intended as security for the fees that might thereafter be agreed upon.

After this matter had been settled, the deed in question was also executed and delivered. Plaintiff testified, on the trial, that she had no knowledge of the execution of this deed, but the evidence leaves no doubt that she signed her name to it and duly acknowledged it before a notary public.

Clodfelter and both the defendants testify that, after securing the fees of her attorney, plaintiff requested him to prepare deeds to said defendant and her two sons to the remaining four fifths of the land, as she would prefer arranging the matter by deeds than by will. Pursuant to this request the deed was made conveying to defendant Florence an undivided one third of the land, reserving to herself a life estate and the royalty on all minerals taken therefrom during her life. The attorney advised that inasmuch as plaintiff's sons were involved in litigation, it would be better to consult them before making their deeds.

The two sons were very much displeased with the settlement made by Clodfelter and to the deed made to defendant. Afterward plaintiff and her two sons met defendants, the matter was discussed and defendants agreed to a cancellation of the deed to the Crawfordsville property. They claim and testify that this was done in settlement of the whole matter.

I. There is no direct evidence that defendants or either of them suggested making the deed. They testify unequivocally that the suggestion came from plaintiff herself, and in this their evidence is corroborated by that of Clodfelter.

Plaintiff denies any knowledge of having made the deed at all, but she admits that it had previously been her intention to give defendant one third of all her property, that at the time the deed was made she had an executed will making the same disposition of her property, and that she had also executed a deed con-

veying to defendant one third of the Crawfordsville land. These circumstances, taken in connection with the positive evidence of defendants, satisfy us that the execution of the deed was the free and voluntary act of plaintiff.

Plaintiff had raised defendant from her infancy and there had always been the tenderest affection between them. In the circumstances, we must treat the relationship between them as that of parent and child. There is no presumption against a voluntary conveyance from parent to child. The burden properly rested upon plaintiff to prove the exercise of some undue influence by defendant over plaintiff by which the deed was secured. *McKinney v. Hensley*, 74 Mo. 332.

We are of the opinion that the evidence fails to prove the allegations of the petition.

The evidence also satisfies us that there was a fair settlement of all differences between the parties before the commencement of this suit. Defendant released to plaintiff valuable property rights, and in consideration thereof, plaintiff, under the advice of her son, fully and freely ratified and confirmed the deed.

II. But the judgment must be affirmed for another reason. It appears from the abstract of the record prepared by plaintiff that some depositions and deeds were read in evidence by defendants on the trial, which have been lost since the trial, and are not contained in the abstract at all. Appellate courts review the evidence, in equity cases, and unless all of it, or its substance, is preserved in the record, we must act on the presumption that the trial court decided correctly. The omitted evidence may be controlling, and we must assume that it was.

It is the duty of the appellant to make an abstract of the record. It is true, when only a copy of the

judgment entries is brought to the appellate court, as in this case, if the abstract is not satisfactory to respondent, he can supply the omissions by an additional abstract. But when the abstract of appellant shows affirmatively that part of the record is omitted because lost, it is the duty of appellant and not respondent to supply it. The burden of pointing out errors in the appellate court, rests upon appellants, and they should appear from the abstract he presents.

The judgment is affirmed. All the judges of this division concur.