ISAAC BONSAL, Appellant, v. KATE B. RANDALL et al.

Division Two, December 22, 1905.

1. **CONFIDENTIAL RELATION: Patient and Nurse: Undue Influence: Presumption.** A daughter who resides with her aged father and renders him affectionate and devoted service when he is stricken with paralysis, does not bear to him the relation of nurse in the sense that the doctrine of patient and nurse is employed by the courts, and hence her acts of kindness raise no presumption against the validity of a deed made by him to her while he was in that condition, and there is no burden upon her to overcome any such presumption.

2. ———: **Parent and Child: Deed: Presumption.** A deed made by an aged father, after he was paralyzed, to a daughter who lived with him and kept house for him, in accordance with an oft-expressed intention, in which he reserved a life interest to himself, and gave her the remainder, although it embraced his homestead and cut out his other children (a son and married

daughter), is not such a transaction as raises a presumption of undue influence or overpersuasion on the part of the daughter, nor is there anything in her relation to him that raises any such presumption.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*Frank L. Forlow* for appellant.

(1)   Any influence, however exercised, which destroys free agency and substitutes the will of another for that of the person in whose name the act brought in judgment is done, is undue and wrongful. Dingman v. Romine, 141 Mo. 466.   (2)   The clause reserving the life estate in the deed does not make the conveyance a will. Likens v. Likens, 122 Mo. 279; Sneathen v. Sneathen, 104 Mo. 201; Allen v. DeGroodt, 105 Mo. 442. (3)   Kate Randall and her father stood in such relation to each other that confidence was necessarily reposed by her father in her and that influence which naturally grows out of  that confidence was possessed by Kate, and that is all that is necessary to establish that fiduciary and confidential relation which invites the watchful and jealous care of a court of equity and renders the transaction between them  presumably  invalid.   2 Pom. Eq. Jur. (2 Ed.), sec. 956; Dunn v. Dunn. 42 N. J. Eq. 431; Garvin, Admr. v. Williams, 44 Mo. 465; Cadwallader v. West, 48 Mo. 483; Yosti v. Laughfran, 49 Mo. 594; Maddox v. Maddox, 114 Mo. 35; Harvey v. Sullens, 46 Mo. 147; Garvin v. Williams, 44 Mo. 465; Street v. Gross, 62 Mo. 226; Rankin v. Patton, 65 Mo. 378; Bradshaw v. Yates, 67 Mo. 221; Bridewell v. Swank, 84 Mo. 467; Gay v. Gillilan, 92 Mo. 250; Hegley v. Head, 126 Mo. 619; Lins v. Lenhardt, 127 Mo. 271. (4)   After proof of facts from which a relation of confidence could be  legitimately  inferred between  Kate

and her father, the grantor and grantee in the deed, and the execution of the deed during the existence of such relation for a nominal consideration (in this case nothing), the burden of proof shifts to the defendant and it then devolved upon her to show that the transaction was fair beyond the reach of suspicion; that absolute fairness, adequacy and equity characterized the transaction. 2 Pom. Eq. Jur., sec. 956; Yosti v. Laughfran, 49 Mo. 594; Street v. Gross, 62 Mo. 226; Rankin v. Patton, 65 Mo. 378; Gay v. Gillilan, 92 Mo. 250; Carl v. Gabel, 120 Mo. 283.

*Thomas Dolan* for respondent.

There is no evidence that respondent procured or suggested the making of the deed. It seems to have been contemplated by the father for a long time. It was not only a sane, but a laudable act to provide for his only daughter by giving her the home, as his son was in business and able to take care of himself. It is true that respondent kept house for her father and nursed him, too; that Bonsal said she would have to take care of him as no one else could, and gave this as a reason for making the deed in her favor. But, as is said in similar case (Hamilton v. Armstrong, 120 Mo. 617) : "The mere fact that these nieces of John Hamilton attempt to make him comfortable during the last week of his life will not raise a presumption of the invalidity of these deeds." Maddox v. Maddox, 114 Mo. 35; Pom. Eq. Jur. (2 Ed.), 962; Doherty v. Noble, 138 Mo. 22; McKinney v. Hensley, 74 Mo. 332; Fitzpatrick v. Webb, 168 Mo. 574; Tibbe v. Kamp, 154 Mo. 545; Carter v. Dilley, 167 Mo. 564; Riley v. Sherwood, 144 Mo. 354; Aylward v. Briggs, 145 Mo. 604; McKissock v. Groom, 148 Mo. 459.

GANTT, J.—This is an appeal from the decree of the circuit court of Jasper county, dismissing a bill in equity brought by the plaintiff against the defendant,

Kate B. Randall, to set aside a deed made by Vincent P. Bonsal to Kate Randall to the north half of lot number eleven, and thirty-seven and a half feet off of the south side of lot number ten, in Patton's addition to the town of Murphyburg, now known as the city of Joplin, which said deed was executed on the 29th of April, 1899.

It is alleged in the petition that the plaintiff is a son of said Vincent P. Bonsal, deceased, and that the defendants Kate B. Randall and J. R. Randall are husband and wife, and that the said Kate Randall is a daughter of the said Vincent P. Bonsal, deceased, and that the defendant Guy D. Randall is a son of Mae Randall, deceased, who was a daughter of the said Vincent P. Bonsal; that Mae Randall departed this life prior to the death of her father; that Vincent P. Bonsal died July 3, 1900, and at the time of his death was and for many years had been a resident of Jasper county; that the defendant Kate Randall was married to J. R. Randall, who is the father of the defendant Guy Randall, since the death of her father; that the defendant Guy Randall is a minor thirteen years of age. Plaintiff states that he, the said plaintiff, and the defendants, Kate Randall and Guy Randall, are the only heirs at law of the said Vincent P. Bonsal, deceased; that on the 29th day of April, 1899, the said Vincent P. Bonsal was the owner in fee simple of the above real estate and on that day made a deed of all of said property to the defendant Kate Randall, by her then maiden name, Kate Bonsal, and the said deed was duly recorded in the deed records of Jasper county on the 3rd day of May, 1899, in book 146, page 243; that at the time of the making of the said deed, the said Kate Randall was living with her father upon the said real estate and so continued to live until the day of his death, July 3, 1900; that at the time of the making of the said deed, the said Vincent P. Bonsal was more than seventy-five years old and afflicted with disease and ailments, partially paralyzed,

and by reason of his great age and infirmities complete-
ly helpless and wholly dependent on others for the com-
mon comforts of life, and was so demented and en-
feebled in body and mind as to render him incapable of
free, independent and rational volition; that from long
residing with and from the habit of being managed and
controlled by the said Kate Randall, the said Vincent
Bonsal had become subject to her will and was in-
capable of resisting her instructions; that the relation of
patient and nurse existed between them; that the said
deed was without any consideration, and the considera-
tion named therein was grossly inadequate. Where-
fore, plaintiff prayed that the said conveyance be set
aside and held for naught, and that the title to his por-
tion of said real estate should be vested in plaintiff.

The defendant Mrs. Randall, in her answer, denied
each and every allegation therein contained, except
that she was a sister of the plaintiff, the death of her
father at the time set forth in the plaintiff's petition,
and the conveyance of the property from her father to
her. She alleged that said conveyance was for a valu-
able consideration; that said consideration was ser-
vices rendered by her by keeping house for him and tak-
ing care of him as long as he lived.

The minor defendant, Guy Randall, answered by
his guardian *ad litem*, W. J. Owen, and asserted his
title to the undivided one-third in the said lot. The
cause was tried at the June term, 1902, on the 25th of
August, and resulted in a decree for the defendant, dis-
missing plaintiff's bill.

The testimony discloses that Vincent P. Bonsal,
deceased, was the father of four children, the plaintiff,
Isaac Bonsal, and another son Vincent and two daugh-
ters, Kate and Mae. Vincent and Mae both died before
their father. Mae had intermarried with J R. Randall
and left one child, the defendant Guy B. Randall. Vin-
cent P. Bonsal's wife died sometime prior to the year

192 sup—34

1899. The plaintiff Isaac had left home and gone in business for himself and was the proprietor of and conducting a foundry at Oronogo in Jasper county. The defendant Kate Randall, at that time Miss Kate Bonsal, taught school and kept house for her father. About the 15th day of April, 1899, Vincent P. Bonsal was stricken with paralysis, and died in the month of July, 1900. He was about seventy years of age at the time of his death, and according to all of the witnesses who knew him, he was a man of strong mind and character. He was on good terms with all of his children and grandchildren. As already said, he was the owner of the lot over which this litigation has arisen. At the time he was taken sick, he also had from three hundred and fifty to four hundred dollars in bank to his credit. It appears that for sometime before he was stricken he had expressed his intention of deeding the homestead to his daughter Kate, saying that his son was well established in business, and his daughter would have to care for him and had done more for the family than any other of the children, and he thought she ought to have the lot, because a woman had a hard time to make a living in this world; that while she was now teaching school, he did not know how soon her health might fail. With the exception of two witnesses for the plaintiff, one who acted as a nurse for something like a month for the old gentleman after he was stricken with paralysis, and another who had very little acquaintance with him, all the testimony tended to show that Vincent P. Bonsal's mind was just as good and strong three or four days after he had his partial stroke of paralysis on the 15th of April, 1899, as it ever had been. Both of the physicians who attended him at the time, and business men and friends who had known him for years and had been his intimate personal friends, all agree that his mind was apparently as good after the stroke as it was before. The witness Shy, who acted as nurse but had had no acquaintance with him before he was taken sick, testi-

fied that in his opinion Mr. Bonsal did not understand what he was doing when he made the deed. The only facts, however, upon which he based this conclusion were that he heard him say that he would starve to death, and on another occasion showed a great loss of memory; that Mr. Price had been in to see him, and a few minutes after Price had left, Mr. Bonsal said he did not see why Price did not come to see him, and when told that Price had just left only a few minutes before, he denied it. In striking contradiction of Shy's evidence, however, the physician testified that he tested Mr. Bonsal's memory especially, and that he recalled facts and circumstances of conversations of several days before with great clearness, and that he discovered no lack of memory whatever in him. But without reproducing the evidence in detail, it is sufficient to say that the testimony overwhelmingly established that Mr. Bonsal was capable of making and understanding the nature of the conveyance which he made to his daughter of this lot. When the notary public brought the deed to him to be executed, he refused positively to sign it until the clause reserving to him a life estate in the property, was inserted in the deed.

Plaintiff seeks to recover in this case on the ground that the deed was obtained by undue influence. There is not a word of testimony in the case that tends to support the charge that Mrs. Randall obtained the deed by any actual undue influence or overpersuasion, but the plaintiff relied upon a presumption of undue influence on account of the relationship of Mrs. Randall to her father of patient and nurse, and insists that the burden is upon Mrs. Randall to rebut this presumption and to show that the transaction was fair beyond the reach of suspicion. It is clear to us that Mrs. Randall did not bear the relation of nurse to her father in the sense in which the doctrine invoked by the plaintiff has been applied by courts of equity. It is true that Mrs. Randall kept house for her father, nursed him,

and ministered to his wants when he was sick, but she did this, not in the capacity of a hired nurse, but as an affectionate and dutiful daughter, and in such case her acts of kindness raise no presumption against the validity of the deed.

This court, in Hamilton v. Armstrong, 120 Mo. 1. c. 615, said: "The assumption that Mrs. Bates and Mrs. McLain bore a confidential relation to their uncle, John Hamilton, from which undue influence might be presumed, merely because they were his nieces, and the natural esteem and affection which should characterize that relation existed between him and them, unaffected by any other relationship, cannot be maintained either by reason or on authority." And in that case, this court quoted with approval the language of Judge MACFARLANE in Maddox v. Maddox, 114 Mo. 35: "We hope it will never be that the visits of a son to an aged and infirm father will be looked upon with suspicion and attributed to a selfish motive." In Doherty v. Noble, 138 Mo. 32, it was said: "There is no presumption against a voluntary conveyance from parent to child. The burden properly rested upon the plaintiff to prove the exercise of some undue influence by defendant over plaintiff by which the deed was secured."

We might add numerous other cases in this State to the same effect, but we deem it entirely unnecessary to cite further precedents as to the law of this State on this proposition. There was nothing in the relation of father and daughter in the circumstances of this case upon which to base any presumption of undue influence or overpersuasion of the father by the daughter. In making the deed to her, he simply carried out an intention which he had often expressed before he was afflicted. He knew that he would be unable in all probability to take care of himself the remainder of his life, and he saw fit, and it was his right, to provide for himself by deeding the lot to his daughter who had already given every evidence of her affection for him.

The property was his and he had a perfect right to dispose of it to suit himself. The circuit judge who saw the witnesses and heard them testify, and lived in the same city with them, found that there was no undue influence in procuring the deed, and we fully concur in the conclusion which he reached. Accordingly the judgment of the circuit court is affirmed.

*Burgess, P. J.,* and *Fox, J., concur.*