MATILDA S. SMITH, Appellant, v. THOMAS R. SMITH, et al.

Division Two, July 19, 1921.

1. **CANCELLATION OF DEED:** Undue Influence: Parent and Son: Burden of Proof. The simple relation of parent and child is not sufficient to justify the cancellation of a deed or lease from the

parent to the son, but in order to authorize such cancellation there must be a further showing of the exercise of undue influence by the son, or the existence of fraud practiced upon the parent by him, or that some advantage was taken by the son of the parent's weak condition of mind; and where there is no evidence tending to show any relation of trust and confidence between the parent and son except that which exists between parent and child, the burden of showing fair dealing and the absence of undue influence does not shift to the son in her suit to set aside a conveyance of her farm to him.

2. ———: ———: ———: **Utmost Fairness.** Where the evidence shows that the utmost fairness characterized the dealings of a son with his mother and manifests a desire on his part to secure to her an adequate income from her farm, which she, because of old age and physical infirmities, was unable to operate, and to preserve the estate intact for himself and her other children, and further shows that, in pursuance to said desire, he took upon himself a burden that he alone of all her children was able to carry, which required the advancement of considerable sums of money and his personal attention for ten years or more before he could be reimbursed, there is no room for the contention that, in her suit to set aside the conveyance, the burden of showing fair dealing and the absence of undue influence shifted to him.

3. **CONVEYANCE: Incapacity of Grantor: Expert Testimony: Exploded by Her Own.** In a suit to cancel a deed and lease made by a mother to her son, testimony of the mother at the trial, eight months after the instruments were executed, in which she clearly relates the conversations and agreement between herself and the son at and prior to their execution, is of itself sufficient to explode the testimony of medical experts to the effect that at the time the instruments were executed she was of unsound mind and incapable of entering into such contractual relations.

4. ———: **To Several Children: Acceptance by All.** Where the mother did not write in her deed to her children, intended as an advancement to each of them, that it should be void unless all of them accepted it, the law will not imply a condition of defeasance in case one or more of them fail to accept it; but as to the grantee to whom it was delivered and as to those who do accept it, it will be a valid conveyance, and as to those only who refuse to accept it will it be held void.

5. ———: ———: **Lease: Ratification.** Where a voluntary deed to a farm by a mother to her children was made subject to a cotemporaneous lease to one of them for ten years at an annual rental, her demand and acceptance of a part of the rental is an affirmance

of the contract with said grantee and lessee, subject to the correction of mutual mistakes, and cannot be avoided as to him because four of the six children refused to accept the deed.

6. **DEED: Lease: Mutual Mistakes: Reformation.** Where the agreement between a mother and her son was that her farm should be leased to the son for ten years at a named annual rental, and in addition he was to pay the taxes and make needed improvements on the dilapidated farm and pay the interest on two existing mortgages and advance her whatever sum above the rental was necessary for her comfort, and he was to be reimbursed for all said outlay above the annual rental by an extension of said lease at the same rental for such a time as would reimburse him, and that a deed should be made to all her children as equal grantees, subject .to said lease, and said agreements were not incorporated in either of said cotemporaneous instruments, and the son, in his answer to the mother's suit to ·have the deed and lease cancelled, asserts that such were the agreements and prays that the instruments be reformed to include them, the court should reform the deed so to make it subject to the lease and the mother's life estate. and reform the lease so as to extend it for such period as will meet the other terms of the agreement.

Appeal from Lincoln Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

REVERSED AND REMANDED. (*with directions*).

*Sutton & Huston* for appellant.

(1) (a) The execution of the lease and deed was the result of undue influence. There existed between plaintiff and defendant, at the time of the execution of the instruments sought to be set aside, a confidential or fiduciary relation, which relation alone raised a presumption of undue influence and devolved upon defendant the burden of showing that the plaintiff was of sound mind, capable of making the deed and lease, and that the instruments in question were made by plaintiff as her free act, uninfluenced by any improper conduct upon the part of defendant, and of showing by clear and convincing proof that he acted with perfect good faith and did not abuse or betray the confidence reposed in him, and of

showing that all was fair, open, voluntary and well understood. McClure v. Lewis, 72 Mo. 320; Youtsey v. Hollingsworth, 178 S. W. (Mo.) 107; McKissock v. Groom, 148 Mo. 467; Jones v. Belshe, 238 Mo. 539; Jones v. Thomas, 218 Mo. 536; Cornet v. Cornet, 248 Mo. 234; Wing v. Havelik, 253 Mo. 508; Martin v. Upson, 189 Mo. App. 636; Naylor v. McRuer, 248 Mo. 459; Roberts v. Bartlett, 190 Mo. 700; Grundmann v. Wilde, 255 Mo. 115; Wendling v. Bowden, 252 Mo. 687; Stahl v. Stahl, 214 Ill. 131; Horner v. Bell, 102 Md. 535; Stepp v. Frampton, 179 Pa. 284. (b) The relation of parent and child is a confidential one, and should be taken into consideration upon the issue of undue influence, and when to this relation is added evidence of actual confidence and trust, as in this case, the burden of showing fair dealing and the absence of undue influence is shifted to the defendant. Youtsey v. Hollingsworth, 178 S. W. (Mo.) 107; Jones v. Belshe, 238 Mo. 539; McClure v. Lewis, 72 Mo. 314; Ennis v. Burnham, 159 Mo. 494; Jones v. Thomas, 218 Mo. 536; Wendling v. Bowden, 252 Mo. 687; Stahl v. Stahl, 214 Ill. 131; Horner v. Bell, 103 Md. 535; Stepp v. Frampton, 179 Pa. 284; Ryan v. Ryan, 174 Mo. 286. (c) The rule that the existence of a confidential relation between the contracting parties raises the presumption of undue influence, is not confined to technical fiduciary relations, such as parent and child, guardian and ward, trustee and *cestui que trust,* principal and agent, but its application extends to all those informal relations in which confidence is reposed or which exist whenever one person trusts in or relies upon another. Stahl v. Stahl, 214 Ill. 131; Horner v. Bell, 102 Md. 135; Stepp v. Frampton, 179 Pa. 284; Ryan v. Ryan, 174 Mo. 286; Jones v. Thomas, 218 Mo. 536; Jones v. Belshe, 238 Mo. 539; Cornet v. Cornet, 248 Mo. 234. (d) Whether the evidence of mental incapacity considered by itself and disconnected with the question of undue influence is sufficient to justify the cancellation of the instruments executed by the plaintiff on that ground or otherwise, yet

such incapacity is so interwoven with the question of undue influence as to make it a factor in the case until the controversy as to undue influence is settled. Grundmann v. Wilde, 255 Mo. 115; McKissock v. Groom, 148 Mo. 567; Jones v. Belshe, 238 Mo. 539. (e) Defendant's answer admits that plaintiff at the time of the execution of the instruments sought to be set aside, was "in an aged and feeble condition of mind and body, and without business experience and incapable of resisting the influence of those who might have sinister and selfish aims against her property, and who might seek to defraud her of the same." This, without more, casts the burden upon defendant to show the absence of undue influence and fraud in the procurement of the execution of these instruments. Holser v. Beard, 54 Ohio St. 398. (2) If a grantor has not capacity equal to a full and clear understanding and comprehension of the nature and consequences of the act, the conveyance is invalid. 22 Cyc. 1170; McKissock v. Groom, 148 Mo. 469; Chadwell v. Reed, 198 Mo. 379; Ellis v. McNally, 177 S. W. (Mo.) 658; Turner v. Anderson, 236 Mo. 544-545; Naylor v. McRuer, 248 Mo. 562. (3) In the case of mutual mistake in the making of a contract, equity will reform the instrument. In case of unilateral mistake, equity will cancel or set aside the contract. This is the universal rule where a relation of trust or confidence exists between the parties, or the parties were not dealing at arm's length, or where any fraud was practiced in the procurement of the execution of the contract. Albany City, etc. v. Burdick, 87 N. Y. 46; Story v. Cammel, 94 N. W. 982; Ward v. Speltz, 39 Neb. 809; Hamilton v. Carpenter, 64 N. E. (Ind.) 939; Loyd v. Phillips, 101 N. W. (Wis.) 1092; Cherry v. Brezzolan, 89 Ark. 315; Moffett & Co. v. Rochester, 178 U. S. 385; Keene v. Demelman, 172 Mass. 222-3; Nelson v. Carlson, 54 Minn. 90; Crowe v. Lewin, 95 N. Y. 423; Deman v. Providence & C. Railroad, 5 R. I. 130; Brown v. Lampluar, 35 Vt. 252. (4) Four of the grantees in the deed declined acceptance of the

deed, and the deed not having been àccepted by all of the grantees becomes void as to all, and this situation vitiates the entire transaction. McNear v. Williams, 166 Mo. 358. (a) Delivery and acceptance of a deed are essential requisites to cause it to operate as a complete and effectual conveyance. Hall v. Hall, 107 Mo. App. 101; Wells v. Hobson, 91 Mo. App. 379; Pullis v. Somerville, 218 Mo. 624; Seibel v. Higham, 216 Mo. 121; McNear v. Williams, 166 Mo. 358; Rogers v. Carey, 47 Mo. 232. (b) There can be no delivery without the consent of the grantee. Turner v. Carpenter, 83 Mo. 333; Schooler v. Schooler, 258 Mo. 83. (c) There can be no delivery of a deed without acceptance of the grantee. Miller v. McCaleb, 208 Mo. 562; McNear v. Williams, 166 Mo. 358; Cravens v. Rassiter, 116 Mo. 338; Schooler v. Schooler, 258 Mo. 83. (d) No title passes until the deed is accepted by the grantee. Cravens v. Rassiter, 116 Mo. 338; Rogers v. Carey, 47 Mo. 232, 236. (e) The filing of a deed made to an adult grantee for record and the recording of the same unauthorized by· the grantee, does not constitute a ·delivery or acceptance. Miller v. McCaleb, 208 Mo. 562; Cravens v. Rassiter, 116 Mo. 338; Allen v. Degroodt, 105 Mo. 442; Rogers v. Carey, 47 Mo. 232. (f) The filing for record of a deed raises a rebuttable presumption of acceptance by the grantee. McLean v. Goodwillie, 204 Mo. 306; Miller v. McCaleb, 208 Mo. 562; Peters v. Berkemeier, 184 Mo. 393; Whittaker v. Whittaker, 175 Mo. 1; Chambers v. Chambers, 227 Mo. 262.

*Creech & Penn* for respondents.

(1) · When Mrs. Smith caused, or permitted the deed ·to her lands to be recorded, conveying her property to her children, there was a presumption of delivery, which can only be overcome by ·evidence adduced by plaintiff, which removes all reasonable doubt that the ·grantor thereby intended to deliver the deed. Hall v. ·Hall, 107 Mo. 108; Burkey v. Burkey, 175 S. W.

624; Chambers v. Chambers, 227 Mo. 284; Tobin v. Bass, 85 Mo. 658; Standiford v. Standiford, 97 Mo. 239; Sneathen v. Sneathen, 104 Mo. 210; Devey v. Fielder, 216 Mo. 192. Acceptance of a deed may be proved by direct or circumstantial evidence, and the presumption of acceptance is stronger where the deed is voluntary, than where there is a sale of the land. Burkey v. Burkey, 175 S. W. 624; Schooler v. Schooler, 258 Mo. 921, 167 S. W. 444; Chambers v. Chambers, 227 Mo. 284. (2) The assumption that Tom Smith bore a confidential or fiduciary relation to his mother, from which undue influence might be presumed, merely because he was her son, and the natural esteem and affection which should characterize the relation existing between mother and son, unaffected by any other relationship, cannot be maintained by reason or on authority. McKinney v. Hensley, 74 Mo. 332; Hamilton v. Armstrong, 120 Mo. 615; Maddox v. Maddox, 114 Mo. 46; Doherty v. Noble, 138 Mo. 32; Bousall v. Randall, 192 Mo. 531; Huffmann v. Huffmann, 117 S. W. 3, 217 Mo. 182; Stanfield v. Hennegar, 259 Mo. 51; Beanland v. Bradley, 2 Smale & G. 339; Mackall v. Mackall, 135 U. S. 167; Jones v. Thomas, 218 Mo. 508; McLeod v. McLeod, 145 Ala. 269; Francis v. Wilkinson, 147 Ill. 370; McCord v. McCord, 136 Iowa, 53; Cooper v. Moore, 55 Misc. 102; Teter v. Teter, 59 W. Va. 449; Wessell v. Rathjohn, 89 N. C. 377; Townson v. Moore, 173 U. S. 17; Prescott v. Johnson, 91 Minn. 273; Rader v. Rader, 108 Minn. 139; Stanfield v. Johnson, 159 Ala. 546; Sears v. Vaughan, 230 Ill. 572. The deed and lease contemporaneously executed are part and parcel of one transaction and should be read together as one instrument, and when so read makes it clear that a life tenancy was reversed in the lands to Mrs. Smith. Cook v. Newly, 213 Mo. 471. (3) When there is a mutual mistake in the execution of an instrument or instruments, in that the written instrument does not express the contract which the parties actually entered into, whether the mistake be of law or fact, equity will re-

form the contract, and this, too, whether the proceeding to reform be by way of a bill to correct a mistake, or by way of an answer as. a defense asking affirmative relief. Corrigan v. Tiernay, 100 Mo. 280; Williamson v. Brown, 195 Mo. 332. (4) The mental incapacity of Mrs. Smith to comprehend and understand the nature of the transaction entered into by her and her son, Tom, is not alleged in plaintiff's petition as a ground for setting aside the deed and lease, but is alleged only as an incident to the susceptibility of Mrs. Smith to undue influence, and the evidence as to her mental incapacity to execute the deed and lease, not being within the pleadings, should be ignored by the court.

HIGBEE, P. J.—Plaintiff brought this suit September 9, 1916, to cancel a lease which she had executed August 24, 1916, of her farm of 217 acres in Lincoln County, Missouri, to her oldest son, Thomas R. Smith, and a deed of the same date conveying said farm to her children, Thomas R., Hugh B., George W., Grover C., Edward B. Smith and Josephine S. Williams, subject to said lease and two deeds of trust, one for $1700 to Zula Thurman, dated July 18, 1913, the other for $921.50 to her daughter, Josephine S. Brady, now Williams dated August 19, 1914.

The plaintiff's first husband died in 1888. She was the beneficiary in life insurance policies on the life of her husband and another relative in the total sum of $4500. She lived on and managed the farm indifferently for some years after her husband's death. She later married a man by the name of Luckett, who had a large pack of hounds, built a race track on the farm, exhibited a freak animal at county fairs, squandered nearly all of her insurance money and grossly mistreated her. All of her grown children advised her to divorce him. She did so in 1903 and paid him $1000 by way of settlement. She had poor health and suffered a paralytic stroke. Her children advised her to remove to St. Louis, where

Thomas, Josephine, George and Hugh lived. She did this in 1903, after selling off her livestock, farm machinery and household goods, and leased her farm to a Mr. Hughes at an annual rental of $620, subject to abatement on account of drouths and floods. During the subsequent years to 1915, she did not receive over $400 per year out of the rents. This was inadequate for her support and payment of taxes, and her medical bills. Some of the time, when able, she kept boarders. The leasing of her farm, then estimated to be worth at least $15,000, was the subject of many conferences for two or three years between Mrs. Smith, Thomas, and some of her other children. There was a fairly good house on the farm, but the barn, other out-buildings and fences were falling into decay. Owing to its distance, her age, and the impairment of her health and mental faculties, it was believed she was unequal to the task of looking after her property and protecting her interests. After paying the taxes and interest on the mortgages, there was little left to her out of the rents. At that time there was $1000 arrears of rent due her from Hughes. Thomas insisted that the farm could be rented for $500 per year, but they failed to secure a tenant who would pay that sum. She talked the matter over with him and Hugh, and probably with some of her other children. Finally, Thomas said he would take a lease on it for ten years at $500 per year and pay her that sum each year, and that whatever amount it should be necessary for him to pay for permanent improvements to the extent of $1500, and for taxes and other fixed charges over the said $500 a year, should be a lien in his favor on the land, and should be taken to extend the term of the lease after his mother's death at $500 per year for such time as should be covered by any sum he should so advance during her lifetime or for her benefit or upon said property in excess of said $500 per year. This appeared to be satisfactory to Mrs. Smith and Hugh, and accordingly she and Thomas, on the evening of August 24, 1916, took

the train for. Troy, the county seat of Lincoln County, arriving there after midnight. The following morning they called upon Mr. Charles Martin, who had been her attorney for many years, who had secured her divorce in 1903, and attended to the settlement of her first husband's estate and other business matters. They talked the matter over with Mr. Martin, who made memoranda and told them he was busy and for them to go to see the farm and return the next day, which they did. Mr. Martin had written the lease, and his son, Robert, the deed. They were read over, signed and acknowledged by Mrs. Smith. Robert Martin had them recorded and mailed them to Thomas in St. Louis, who showed them to Hugh and to Josephine in her mother's presence. Josephine, who had been a stenographer in a law office for four years, said: "Why, Mamma, you deeded everything away, you haven't got a penny, and Tom is the only one that could give it back." Mrs. Smith was then and had been for some time living with her daughter, Josephine.

The second amended petition charges that plaintiff was without any means of support except as derived from her land, and was afflicted with physical and mental infirmities due to old age and disease, and was without previous business experience, and wholly incapable of resisting the influence of those about her and particularly of Thomas R. Smith, who was her confidential business adviser and had an irresistable influence over her, and that by reason thereof she was induced against her will to execute the lease and deed which were set out in the petition. That she did not understand the terms and conditions of said instruments, and that they failed to reserve to her a life estate in said land and the rents thereof during her life, but she believed said instruments were so drawn as to reserve to her a life estate in said lands and the rents accruing thereon during her life; that she did not understand that by said lease defendant was permitted to deduct the value of improvements made by

him from the annual rents, but that she believed that, by the terms of said lease, she should receive $500 annually in cash without deductions for improvements or any other account, and believed said lease provided that defendant should have the privilege of making permanent improvements not to exceed $1500, and in case the annual rental of $500 was insufficient to maintain plaintiff in a suitable manner, then that defendant should advance plaintiff adequate funds for that purpose during her life and in case of such advancements being made to plaintiff or of such improvements being made upon said land by defendant, then that this should operate as an extension of the terms of said lease after plaintiff's death for a period sufficient to reimburse defendant for such advancements and improvements at a rental of $500 per annum, and that defendant should keep all buildings on the premises insured and pay the premiums thereon, and pay all taxes on the premises as further rental in addition to the $500 per annum aforesaid, and believed that the children should assume and pay the debts secured by said deeds of trust aforesaid; that plaintiff did not understand that the taxes and insurance on the premises should be taken as credits on the annual rents received; that she was induced to execute the said instruments by the undue influence of the said Thomas amounting to over-persuasion and coercion, and by false representations, pretenses and deception practiced upon her as aforesaid and relied upon by her, and by reason of the fiduciary relation existing between them and her implicit confidence in her said son, and by reason of plaintiff's physical and mental infirmities, and by reason that plaintiff did not understand the nature and purport of said instruments; that said lands were reasonably worth at least $15,000, and that by their execution she had stripped herself of every vestige of property and means of support; that said deed was never delivered to any defendant other than Thomas R. Smith, and the same was executed and recorded without the knowledge

of, and was never accepted by, said other defendants, but was renounced and rejected by them as soon as they learned of its execution. Wherefore, plaintiff prays that said deed and lease be cancelled and for other proper relief.

Hugh B. Smith filed an answer which was a general denial.

Thomas R. Smith answered, admitting that plaintiff was, on August 24, 1916, owner of said farm and that she was in an aged and feeble condition of mind and body, without business experience, and incapable of resisting the influence of those who might have sinister and selfish aims against her property or who might seek to defraud her of the same; that realizing said fact she had, prior to said date, repeatedly requested him to enter into an agreement with her by which she would be guaranteed from said property an income of $500 per annum and by which said property would remain intact for her heirs, the defendants in this suit; that $500 is the full rental value of said property and it was agreed that he would rent it at that sum per year and pay her that sum annually, and whatever sums it should be necessary for him to pay for necessary improvements, not to exceed $1500, taxes and other fixed charges, should be a lien in his favor on the land, and should be taken to extend the term of his lease after plaintiff's death at $500 per year for such time as should be covered by any sums he should so advance to plaintiff during her life or for her benefit or upon said property over the said $500; that said arrangement was entered into by him at his mother's solicitation solely for the purpose of protecting her and her presumptive heirs, against the dissipation of said property in her lifetime; that the instruments drawn for that purpose are as set out in the petition; that they were drawn by his mother's counsel; that it was a mutual mistake that the warranty deed should be drawn without reserving a life estate to his mother, and he is willing that the court, by its decree, vest a life estate in said property in his mother, subject to said lease, and

if said lease fails to conform to the intentions of the parties, he consents that the court may reform it to conform to the intentions of the parties. All other allegations were denied. Defendant further says that, on December 7, 1916, after this suit was commenced, the plaintiff, with full knowledge of the nature of said lease, accepted from this defendant $170 in part payment of the rent reserved to her in said lease.

The reply was a general denial.

The other defendants entered their appearance, but did not plead to the petition.

The cause was tried to the court in June, 1917, taken under advisement, and on September 28, 1917, the court entered its finding that, in order to make the deed contain the understanding of the parties, the following item should be incorporated therein to-wit: ''It is understood and agreed that the grantor reserves to herself in and to the lands herein described a life estate and this deed is made subject to the life estate of the grantor during her natural life.''

The court also found that there was a mutual mistake of fact made in the execution of the lease, and it was ordered and decreed that the said lease be reformed by incorporating therein the following clause, to-wit:

''It is understood and agreed by the parties to this lease that the value of improvements that may be made by the party of the second part under the provisions of this lease shall not be taken as credits on the annual rents reserved, but such inmprovements shall operate as an extension of the term of this lease for a period sufficient to pay the party of the second part for the same at an annual rental of five hundred dollars.

''And it is further ordered, adjudged and decreed by the court that the plaintiff and defendant, Thomas R. Smith, pay the costs of this suit in the proportion of one-half each, and that execution issue therefor.''

After motion for new trial was overruled, plaintiff appealed.

289 Mo.—27

I. Appellant insists that in view of the relation of parent and child between her and her son Thomas, the burden of showing fair dealing and the absence of undue influence shifted to the defendant.

*Undue Influence.*

There was no evidence tending to show any relation of trust and confidence between plaintiff and her son Thomas except that which exists between parent and child, and such relation is not sufficient to justify the cancellation of a deed or conveyance from a parent without showing the exercise of undue influence or the exisence of fraud or that some advantage was taken by the son of the mother's weak condition of mind. [McKinney v. Hensley, 74 Mo. 326, 332; Hamilton v. Armstrong, 120 Mo. 597, 615; Doherty v. Noble, 138 Mo. l. c. 32; Bonsal v. Randall, 192 Mo. 525, 531, 532; Huffman v. Huffman, 217 Mo. 182, 192, 117 S. W. l. c. 3; Mackall v. Mackall, 135 U. S. 167]

It is unnecessary and would be unprofitable to set out the voluminous evidence on this or any other issue in the case. It justified the learned trial court in finding that the utmost fairness and a desire to secure to Mrs. Smith an adequate income from her farm, which, from her age and infirmities, she was unable to operate, and to preserve the estate intact for her children, characterized the dealings of her son Thomas. He took upon himself a burden that he alone of all the children was able to carry, which required the advancement of considerable sums of money and his personal attention for probably ten or more years before he could be reimbursed for his outlays.

II. It was attempted to be shown by medical experts that at the time the lease and deed were executed, Mrs. Smith was of unsound mind and incapable of entering into such contractual relations with her son. That issue was not tendered by the petition. It is not averred she was of unsound mind or mentally incapable of transacting her business. At the trial,

*Incapacity.*

eight months after the lease and deed were executed, she very clearly related the conversations and agreement between herself and her son at and prior to their execution in August, 1916. The evidence of her son Thomas differed in a few details from that of his mother in this respect. This circumstance alone explodes the testimony of the medical experts. Aside from this consideration, there was the testimony of disinterested witnesses who had known Mrs. Smith for many years as to her contemporaneous statements of the transaction, which harmonized with Thomas's evidence at the trial.

III. Appellant contends that because four of the grantees refused to accept the deed it is therefore void; that is, all of the grantees must accept the deed before it becomes operative. McNear v. Williamson, 166 Mo. 358, is cited. This question did not arise in that case. It was there held that delivery of a deed is the consummation of the act, and in order to its accomplishment there must be a meeting of the minds of the parties on the purpose. It is admitted in the petition that the deed was delivered to Thomas. There is no question that Hugh also accepted it. The legal effect of the deed was to convey an undivided one-sixth part of the farm to each of the grantees, if he accepted by them. Mrs. Smith did not write in the deed a condition avoiding it unless all the grantee should accept it. It was intended as an advancement to each of her children and the law will not imply a condition of defeasance in case one or more of the grantees should fail to accept the deed. The petition avers that the deed was never delivered to any defendant other than Thomas, but was rejected by the other grantees. The petition does not seek relief against Thomas on the theory of non-delivery to and non-acceptance by the other grantees, but solely because of undue influence and the failure to reserve a life estate for the grantor. The deed and lease were executed contemporaneously, as one transaction, and should be read together. The deed was made subject to the lease. This

was explained by Mrs. Smith's attorney, Mr. Martin, at the time the instruments were drawn. Moreover, after Mrs. Smith had consulted her attorneys about this action she asked Thomas to pay the first installment of rent, $250, due January 1, 1917, saying she wanted to buy some hogs to eat her part of the damaged crop on the farm. He paid her $170, which she paid to her attorneys on their fee in this case. She then knew all the conditions. She cannot play fast-and-loose. By demanding and accepting part of the rent received in the lease she affirmed the contract with her son Thomas, subject, of course, to her right to have mutual mistakes in the deed and lease corrected. But the court should have canceled the deed as to the defendants George W. Smith, Grover C. Smith, Edward B. Smith and Josephine S. Williams because of their refusal to accept it.

IV. There remains a question about the payment of taxes and interest on the two deeds of trust on the farm which, no doubt inadvertently, is not settled by the decree. Thomas admitted in his answer that he was to pay these and he was not to have credit on the rent therefor. If the $500 annual rentals should be insufficient for the comfortable support of his mother, he agreed to advance such further sums as would be sufficient. He also agreed to make permanent improvements not to exceed the value of $1500, pay the taxes and other fixed charges (which we understand to be interest on the two deeds of trust) over and above the $500 per year, "for which he should have a lien on the farm, but such payments and improvements shall operate as an extension of the terms of this lease for a period sufficient to pay him therefor at an annual rental of $500." There was little, if any, dispute about the facts; the pleadings entitled the parties to have the lease reformed. The decree, however, reforming the lease, should include the payment of taxes and interest as above indicated.

The judgment is therefore reversed and the cause remanded with directions to enter a judgment and decree as indicated in the foregoing opinion. All concur.