Frances Gillespie UNDERWOOD,
Plaintiff-Respondent,

v.

P. D. GILLESPIE, Bonnie Gillespie, Walter Gillespie and Donald Gillespie,
Defendants-Appellants.

No. 11423.

Missouri Court of Appeals,
Southern District,
Division Three.

Feb. 5, 1980.

Bradshaw Smith, Cape Girardeau, for plaintiff-respondent.

James E. McGhee, Bloomfield, for defendants-appellants.

PREWITT, Judge.

Plaintiff brought an action for partition contending that she and defendants were co-owners as tenants in common of 100 acres in Stoddard County, Missouri. Defendants denied that plaintiff had any interest in the property and asked the court to quiet title in them. The trial court found that plaintiff owned an undivided one-third of the property and decreed partition.

Plaintiff claims that she and defendants acquired their interests in the property as residuary devisees under the will of Zella Bacon. Mrs. Bacon died February 10, 1974. Defendants claim they alone own the land under a deed from her dated March 9, 1966. That deed provided a life estate to her brother, Gus Gillespie, with the remainder in fee to defendants-appellants, his sons. The deed was taken to her house on that date by her attorney. She signed and acknowledged it there. Gus Gillespie then arrived and Mrs. Bacon handed him the deed. He looked at it and said "Damn it, sister, you can't do this, you can't treat my children this way, you can't give part of my children something and not give them all something." Mrs. Bacon replied, "Well, honey, I've given the girls something in my will." Gus then said something to the ef-

fect of "You can tear it up", or "You can revoke the will". The attorney left while they were still talking. Later that day Mrs. Bacon called him and he went back to her house. Gus was gone. She told him that Gus had torn up the deed. The attorney saw the torn up deed in the wastebasket. She asked the attorney what happens to the land, and was advised, "Well, he just doesn't get it." In September of 1969, she had her attorney prepare an additional will, devising this and other property to plaintiff for life, with the remainder to plaintiff's children. That will was never executed. Gus Gillespie died October 20, 1968, and half of the deed was then found in his papers. Apparently this was the first defendants knew of the deed. Whether he retained this part from the time he first received the deed and why he kept it is not known. It was never recorded. Following the deed, Mrs. Bacon continued to collect rent on the 100 acres until a guardian was appointed for her in early 1972. Then it was paid to the guardian, and after she died, to her estate. From 1966 through 1975 the property was assessed for tax purposes in Mrs. Bacon's name. She paid the taxes on the land herself until 1971. Thereafter, her guardian, and executor, paid the taxes. The property was inventoried in both her guardianship and decedent estates and record title was in her name at her death. The trial court found the deed to be invalid "for want of proper delivery and acceptance".

The defendants contend that the trial court erred in two respects: (1) because the judgment was against the weight of the evidence as the persuasive evidence was that Gus Gillespie, after having torn the deed, subsequently accepted the deed by making improvements to the property and retaining a torn piece of the deed; and (2) in determining that the refusal of a life tenant to accept a deed defeats the remainder interests.

◼ First considering point I. There was no substantial evidence which conclusively showed that Gus later accepted the conveyance. We do not rule whether a later acceptance after this apparent rejection would be valid, as there was no evidence which clearly indicated that he thereafter claimed ownership. The possession of half a deed does not convince us that he thereafter accepted it. While a presumption of delivery may arise where a deed is found in the possession of a grantee, *Cartmill v. Evans*, 498 S.W.2d 541, 545 (Mo. 1973); we don't believe that half a deed earlier rejected should have the benefit of such presumption. There was evidence of some work he did or had done to the property before the deed. Even if this evidence had shown acts after the deed was rejected, it was inconclusive at best. There was also some evidence that she considered Gus to be the owner of the property or intended to leave it to him. The credibility of this testimony, even if material, was for the trier of fact. *Ripka v. Wansing*, 589 S.W.2d 333, 337 (Mo.App.1979). He may not have believed it. No findings of fact were requested. Where no findings of fact are made, all fact issues are deemed to have been found in accordance with the result reached. Id., 589 S.W.2d at 336. Mrs. Bacon continued, after the deed, to exercise the normal incidents of ownership to the property. She paid the taxes and collected the rents. On this point we cannot say that the judgment was against the weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Point I is denied.

We now turn to point II which we view as the principal question before us. We must determine if Gus Gillespie's reaction to the deed was such as to prevent the remainder from being received by his sons.

◼ The delivery of a deed is necessary to pass title, and in order to have delivery there must be an acceptance. *Fritz v. Fritz*, 479 S.W.2d 198, 200 (Mo.App.1972). Whether there was delivery depends upon the facts of each case and all relevant facts and circumstances should be considered in determining the question. *Carr v. Lincoln*, 293 S.W.2d 396, 401 (Mo.1956). Had Gus accepted the deed, defendants would have received their interest, as delivery of a deed to a life tenant is a sufficient delivery for

the benefit of the remaindermen. 26 C.J.S. Deeds § 49, p. 707. His actions justified the trial court's finding that the deed was not accepted. Having rejected the deed, did that action prevent the defendants from receiving the fee? Neither the attorneys nor this court have been able to locate a Missouri case directly in point. Appellants' counsel cite *Maynard v. Hustead*, 185 Okl. 20, 90 P.2d 30 (1939), and *Miller v. Miller*, 91 Kan. 1, 136 P. 953 (1913), holding in similar situations that it does not. Our research has found *Martin v. Adams*, 216 Miss. 270, 62 So.2d 328 (1953), which holds that such conduct does prevent defendants from acquiring any interest. While these cases are similar on their facts, we do not find the basis for their holdings persuasive.

■■■ The *Maynard* and *Miller* decisions state, and defendants acknowledge, that at common law remainder interests are dependent upon a life estate and that the refusal of the life tenant to accept the life estate defeats the remainder. Based on a Kansas statute like § 442.020, RSMo 1959, *Miller* holds that this rule no longer applies. *Maynard* was decided upon an Oklahoma statute which specifically removes the necessity for an estate prior to a remainder. Even if we construe § 442.020 as changing this common law rule, we do not think that it necessarily follows that defendants are granted an interest in the property. This section provides that "conveyances of lands, . . . may be made by deed . . . without any other act or ceremony whatever." What she could have done and what she attempted here may be two different things. She may have been able to grant the remainders without the life estate, but she did not try to do that. She tried to grant a life estate with a remainder. We do not think that removing the common law rule, if that is the effect of applying § 442.020 here, necessarily requires that when the life estate fails the remainder is still valid nor do we believe it does away with the necessity for acceptance of the deed.

■■■ The general rule on acceleration of remainder interest as discussed in *Cavers v.*

*St. Louis Union Trust Company*, 531 S.W.2d 526 (Mo.App.1975), and Restatement, Property, § 231, we find not controlling here. In cases where that most likely would occur, such as wills or trusts, it is a rule to be followed in trying to ascertain the intentions or the scheme closest to the intentions of the conveyor. As stated on page 962 in Comment a, § 231 of the Restatement, Property: "Whenever an attempted prior interest is renounced, some disturbance of the desired plan of disposition is inevitable. The extent of this disturbance normally is kept at a minimum by accelerating the succeeding interests. This occurs in accordance with what is normally to be inferred as the intent of the conveyor, . . . ." In wills, and often in trusts, the conveyor is deceased and cannot make a different disposition. This rule may apply to valid instruments but should not make effective a deed if it is completely invalid for want of delivery and acceptance.

■■■ *Smith v. Smith*, 289 Mo. 405, 233 S.W. 183, 186 (1921) states that although some of the grantees refuse their interest under a deed, the deed is still valid as to those grantees which accept unless the validity of the deed was conditioned on all accepting. However, it does not appear that the case was decided on that basis. We also believe that even if this statement in the case is correct it does not determine this case because of the different situation. In *Smith* the deed was delivered to one of the accepting grantees, all of which were granted a present possessory interest. When a grantor delivers it to one, for that one to retain it and normally record it, it can be presumed that the grantor intended it to be effective to all that accept, absent some condition. It is different where there is no actual acceptance, and where the remainder may not become effective for many years, pending the death of the life tenant.

■■■ The controlling element in determining delivery is the intention of the parties, particularly that of the grantor. *Cartmill v. Evans*, supra, 498 S.W.2d at 545. Acceptance is a part of delivery and we feel

her intentions as to who might accept the deed and the conditions under which it could be accepted must be considered. Under these circumstances only inferences as to her intentions can be made. Mrs. Bacon apparently intended to deliver the deed when she gave it to Gus. Saying that she still intended that title pass to his sons, if Gus rejected it, might be speculation. With Gus's rejection of the deed, Mrs. Bacon may not have wished that the remainder interest pass to his sons. Had she wanted it to go directly to them, she could have done so at the time of this deed. For whatever reason, she wanted Gus to first have a life estate in the property. When that was rejected, we cannot say that she still wanted title to eventually vest in defendants. She would likely assume that this unrecorded, torn deed would not pass any interest. She thereafter could have made a deed directly to the defendants but did not. Later she instructed her attorney to prepare a will, which she never signed, devising the land to plaintiff for life, with remainder in plaintiff's children. She apparently assumed that Gus had a right of approval and could accept or reject the entire deed. The deed was rejected because Gus did not want the boys alone to take under the deed. She appears to have acquiesced in that decision. Following his death, when the remainders would have taken effect, she continued to treat the land as hers. While it can be presumed that defendants would have accepted the property, (See *Bailey v. Williams*, 326 S.W.2d 115, 122 (Mo.1959); 26A C.J.S. Deeds § 186) we cannot assume that Mrs. Bacon wanted them to have it or any right of acceptance of it under circumstances different than she contemplated. Were we to say that the deed was valid without a life estate, we may be in effect creating a new instrument contrary to her wishes. If we presume acceptance, it may be an acceptance not intended by Mrs. Bacon.

In *Miller v. McCaleb*, 208 Mo. 562, 106 S.W. 655 (1907), the grantor made a deed to his wife and to his "lawful heirs". The deed was recorded but there was no evidence that it was delivered to or accepted by her or the heirs. The court noted that while the recording of a deed may raise a presumption of delivery, this may be rebutted. As there was evidence that she did not accept the deed, it had no effect, and the heirs received no interest in the property. While the facts are much different than here, the decision indicates the necessity for acceptance of the deed.

Before giving the deed to Gus, Mrs. Bacon likely had no intention as to what should occur to the remainder in the event of rejection. If a future interest passed as a matter of law when the deed was handed to Gus, it may have been against her wishes and intentions, but it would thereafter be out of her control to change. If nothing passes by such a deed, the grantor can make such other disposition as he or she may wish. We believe the better rule is to hold that the entire deed is invalid in such a situation rather than to hold it is partly binding. It would be a simple matter to transfer an interest by a new deed in such event and it would not necessitate a result not likely contemplated and perhaps not desired. Upon its rejection, no further efforts were made to deliver the deed or record it. The inferences from her conduct are that Mrs. Bacon then viewed the deed as invalid. She did not indicate that she was still intending to transfer an interest to the remaindermen. Acceptance is a necessary part of delivery and as the person to whom the deed was given rejected it, it was not accepted. The grantor did not indicate that acceptance by the remaindermen was thereafter available to them. The presumption that they would have accepted does not apply, as it appears that acceptance was not considered by the grantor to be a decision for the remaindermen, unless their father agreed to the disposition and accepted the deed. We hold that the deed was not accepted in the manner apparently contemplated by the grantor and passed no interest to defendants. Point II is denied.

The judgment is affirmed.

TITUS, P. J., and GREENE, J., concur.

BILLINGS, J., recused.