# SUPREME COURT,
## STATE OF KANSAS.

## JULY TERM, 1913.

*PRESENT:*

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,
HON. CLARK A. SMITH,
HON. SILAS W. PORTER,  } JUSTICES.
HON. ALFRED W. BENSON,
HON. JUDSON S. WEST,

No. 17,792.

LOUIS D. MILLER, *Appellee,* v. GEORGE W. MILLER, *Appellee,* and NETTIE J. MILLER et al., *Appellants.*

### SYLLABUS BY THE COURT.

CONVEYANCE—*A Freehold Estate in Remainder to Commence in Future May be Created without a Particular Estate to Support it.* A grantor executed a voluntary conveyance of land to his son for life, remainder to the son's wife for life should she survive her husband, or so long as she remains his widow, remainder in fee to the heirs of his son's body, and in default of such heirs, reversion to the grantor. The grantor filed the deed for record and afterwards offered it to his son who refused to accept it. At that time the wife and two children of the son were living. *Held:*

1. COMMON LAW ABROGATED BY STATUTE. The common-law restrictions on the creation of future estates were abolished by section 3 of chapter 22 of the General Statutes of 1868, providing that conveyances of land or of any other estate or interest therein may be made by deed, and the remainders to the son's wife and to the heirs of his body are valid although the particular estate for life to him did not come into existence.

1—91 KAN.

2. REMAINDERS NOT ACCELERATED. The remainders are not accelerated by the refusal of the son to accept the conveyance of the life estate to him.

3. ——— *Independent Grants.* The provision for the son is not so complicated with the other gifts specified in the deed that the failure of one destroys them all.

4. HEIRS OF BODY—*When Ascertained.* The son has no heirs at all while living. Who the heirs of his body may be can not be ascertained until his death, and children now in being take nothing under the deed unless they outlive their father.

5. RECORDING BY GRANTOR — *Delivery — Acceptance.* The recording of the deed by the grantor made it effective as to all persons benefited by it who did not dissent.

6. INTERPRETATION—*Language of Instrument—Surrounding Circumstances.* The intention of the grantor is to be ascertained from the language employed in the deed. In case of doubt, interpretation may be aided by evidence of the situation and circumstances of the grantor and his relation to the grantees at the time the deed would take effect if valid, but it can not be impeached by testimony of the grantor that he did not intend anybody should have the land if his son refused to take.

Appeal from Miami district court; JABEZ O. RANKIN, judge. Opinion filed December 6, 1913. Reversed.

*Frank M. Sheridan, Charles T. Meuser,* and *Bernard L. Sheridan,* all of Paola, for the appellants.

*W. L. Joyce,* of Paola, for the appellee.

The opinion of the court was delivered by

BURCH, J.: In March, 1902, Louis D. Miller undertook to divide a portion of his real estate among his children, seven in number. To that end he executed a deed to each one of a particular tract of land. His wife joined in the execution of the deeds, but he retained them in his possession. Afterwards his wife died, and he remarried. On December 7, 1904, the day before his remarriage, he filed the deeds for record and paid for the recording of them. As soon as they were recorded they were returned to him. Each deed

conveyed an estate in fee simple, except the one to his son, George W. Miller. This deed was in form a warranty deed executed in consideration of parental love and affection, and granted the land to George W. Miller for his life, remainder to Nettie J. Miller for her life, should she survive her husband, or so long as she remains his widow, remainder in fee to the heirs of the body of George W. Miller, and in default of such heirs, reversion to the grantor.

On February 1, 1905, Louis D. Miller handed this deed to George W. Miller, but the son refused to accept it because of the discrimination his father had made against him and in favor of his brothers and sisters. At this time George W. Miller and Nettie J. Miller were husband and wife and had two children, Vernon and Ethel. In February, 1906, Nettie J. Miller procured a judgment for alimony against her husband. In March, 1906, an execution was issued and George W. Miller's interest in the land described in his father's deed to him was sold. Nettie J. Miller became the purchaser, and a sheriff's deed was issued to her.

The action was instituted by Louis D. Miller against George W. Miller and Nettie J. Miller to cancel the unaccepted deed and the sheriff's deed, and to quiet his title. On the application of Nettie J. Miller the children were made parties to the suit. Judgment was rendered in favor of the plaintiff, and the defendants appeal.

The district court held that the remainders to Nettie J. Miller and to the heirs of the body of George W. Miller were void. No estate of any kind vested in George W. Miller because he repudiated the effort of his father to convey to him. The purpose of the grantor was to create freehold estates in remainder to commence at a future time. Under the common law this could not be done without the grant of a precedent particular estate to support them, and under the common law whenever the particular estate is void at its

inception, or for any reason does not come into being, remainders limited upon it are defeated.

This court is of the opinion that the common-law rules referred to have been abrogated by statute.

The territorial legislature of 1855 passed an act relating to conveyances which dealt with the subject of the creation of future estates as follows:

"When an estate hath been, or shall be, by any conveyance, limited in remainder to the son or daughter, or to the use of the son or daughter of any person to be begotten, such son or daughter, born after the decease of his or her father, shall take the estate, in the same manner as if he or she had been born in the lifetime of the father, although no estate shall have been conveyed to support the contingent remainder after his death. And, hereafter, an estate of freehold, or of inheritance, may be made to commence in future by deed, in like manner as by will." (Statutes of Kansas Territory, 1855, ch. 26, § 9.)

In 1859 the act of 1855 regulating conveyances was revised, and section 9 was condensed and restated as follows:

"Estates may be created, to commence at a future day." (Kansas Statutes, 1859, ch. 30, § 6.)

This act remained in force until repealed in 1868, when another revision occurred. In this revision section 6 of the act of 1859 was omitted and the subject was covered by a declaration as general as it was possible to make.

"Conveyances of land, or of any other estate or interest therein, may be made by deed, executed by any person having authority to convey the same, or by his agent or attorney, and may be acknowledged and recorded as herein directed, without any other act or ceremony whatever." (Gen. Stat. 1868, ch. 22, § 3.)

The words, "conveyances of land," mean, of course, the land itself in fee simple absolute. The words, "any other estate or interest therein," include estates of freehold and less than freehold, of inheritance and not

of inheritance, absolute and limited, present and future, vested and contingent, and any other kind a grantor may choose to invent, consistent, of course, with public policy.

The doctrine of the particular estate arose from the necessity under the feudal system of always having a tenant to fulfill feudal duties, defend the estate, and represent it so that other claimants might maintain their rights. The only way to pass a freehold estate was by livery of seisin which operated immediately or not at all, and if the freehold became vacant the lord had an immediate right of entry and all limitations of the tenancy came to an end. The result was that in order to create a freehold estate, the enjoyment of which was to be postponed to a future time, it was necessary to support it by a precedent particular estate taken out of the inheritance, and to make livery of seisin to the particular tenant, which by fiction inured to the remainder man or remainder men. A much more liberal and equitable doctrine applied to the transmission of estates by will.

"An executory devise of lands is such a disposition of them by will, that thereby no estate vests at the death of the devisor, but only on some future contingency. It differs from a remainder in three very material points; 1. That it needs not any particular estate to support it. 2. That by it a fee-simple, or other less estate, may be limited after a fee-simple. 3. That by this means a remainder may be limited of a chattel interest, after a particular estate for life created in the same." (2 Bl. Com., p. *172.)

The legislature of 1855 placed conveyances by deed on the same footing as wills so far as the creation of future estates was concerned, but following the lead of the legislatures of some of the older states, the Kansas legislature of 1868 undertook not only to permit the granting of future estates but to abolish other common-law restrictions on alienation not suited to

allodial tenures and modern conveyancing, and to make transfers of interests in land as free as possible. The concluding portion of section 3 of the act of 1868, quoted above, expressly abolishes the common-law ceremony of livery of seisin, which stood as an insuperable bar to the creation of freeholds to begin *in futuro* unless supported by a particular estate. The language was adapted from statutes of other states, which usually provided that deeds duly acknowledged and recorded should be valid and pass estates in land "without livery of seisin, attornment, or other ceremony whatever."

It follows that the remainders to Nettie J. Miller and to the heirs of the body of George W. Miller do not require the support of the life estate to George W. Miller in order to be valid.

The defendants claim the remainders were accelerated by the refusal of George W. Miller to take, and consequently that they occupy the same situation as if he were dead. If a testator devise an estate for life to his widow, with remainder over in fee, and the widow elect to take under the law and not under the will, the remainder is ordinarily accelerated to take effect as if the widow had died. The rule is equitable in character and proceeds upon the assumption that the gift over of the fee was the principal thing in the testator's mind, that the life estate was a mere charge on that gift, and that he desired the gift in fee to take effect whenever the life estate for any cause was out of the way. The rule applies to other situations, but never when the result would be contrary to the testator's intention. (16 Cyc. 651; 24 A. & E. Encycl. of L., 418; Note, 18 L. R. A., n. s., 272.)

The defendants, Vernon Miller and Ethel Miller, children of George W. Miller, are not mentioned in the deed. The remainder in fee is given to the heirs of the body of George W. Miller, dubious and uncertain persons not now known and who can not be as-

certained except on the contingency of George W. Miller's death. He has no heirs at all while he is living. We have then a deed under which George W. Miller takes nothing, and his two children now in being take nothing unless they outlive their father. Nettie J. Miller's estate is simply a charge on the postponed fee, which she is not to enjoy unless she survive her husband and then only during widowhood. Manifestly the grantor was not making a deed of no immediate benefit to any one but her and which would put her in present possession to continue for her life, should she not remarry, although her husband is still living. If, therefore, the rule relating to wills were to be applied, the remainders could not be accelerated. That rule, however, will rarely govern grants by deed. A deed sounds in contract. It takes effect on delivery and not after the grantor's death, and in the absence of the equivalent of alternative provisions the presumption is that each grantee is given what the grantor intended he should receive. If any one refuse to take, his share remains a portion of the grantor's estate to be disposed of by will or by deed as he may desire, or to descend to his heirs, and not to be absorbed by other grantees whose portions are defined by the instrument.

The only remaining question is whether or not the provision for George W. Miller is so complicated with the other gifts specified in the deed that the failure of one destroys them all. This question is one of interpretation, to be resolved by a consideration of the language of the instrument. In case of doubt the interpretation may be aided by evidence of the situation and circumstances of the grantor, and his relation to the grantees at the time the instrument would take effect if valid.

The scheme of the instrument in question is perfectly simple, and the failure of one portion to become operative does not involve any of the others. If the extrinsic evidence were to be resorted to it would con-

firm the deed. Louis D. Miller and his first wife made a distribution of his property among their children. The deeds were not delivered in the lifetime of the first wife, and to make them effective against the second wife they were placed on record the day before her marriage to Louis D. Miller. At that time all the children were in possession of the lands intended for them except one. George W. Miller had occupied the land in controversy for three or four years under an arrangement with his father that he should pay the taxes and have all the crops he could raise. He was given a life estate because of his dissolute habits and to prevent him from squandering the property.

Louis D. Miller was permitted to testify that he did not intend anybody else should have the land, if George W. Miller did not accept the deed. The recording of the deed made it effective as to all grantees benefited by it who did not dissent. (*Wuester v. Folin,* 60 Kan. 334, 56 Pac. 490.) The intention of the grantor must be derived, as in other cases, from the language of the instrument itself, which can not be impeached except on the equitable grounds of accident, mistake, fraud, and the like, none of which appears. (See, *Pentico v. Hays,* 75 Kan. 76, 88 Pac. 738.)

The result is that the estate to Nettie J. Miller for life or during widowhood and the remainder in fee to the heirs of the body of George W. Miller should be confirmed, but the title of Louis D. Miller should be quieted against George W. Miller and against the sheriff's deed to Nettie J. Miller.

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment as indicated.