No. 34,751

GEORGE T. FOOSHEE, Trustee of the Estate of Margaret Kasenberg, Bankrupt, *Appellant*, v. GRANT KASENBERG, MARGARET KASENBERG and BERTHA KIBBEE, *Appellees*.

(102 P. 2d 995)

Opinion filed June 8, 1940.

*Robert R. Hasty* and *Verne M. Laing*, both of Wichita, for the appellant.

*Paul H. White, Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt*, all of Wichita, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: The action was by the trustee in bankruptcy of the estate of Margaret Kasenberg to recover for the estate the property in question. The appeal is from the order and judgment of the court sustaining a demurrer to evidence of the plaintiff.

Grant Kasenberg and Margaret Kasenberg were divorced February 10, 1922.

On June 23, 1925, Margaret Kasenberg received a deed to the real estate in dispute. On July 15, 1931, she executed and delivered a warranty deed conveying the property to C. M. Jackman. The deed was given as security for a loan. On October 21, 1933, this deed, without having been filed for record, was redelivered to Margaret Kasenberg by C. M. Jackman. On that date Margaret Kasenberg signed the following written statement addressed to C. M. Jackman:

"I further acknowledge receipt of an unrecorded deed from myself to you, dated the 15th day of July, 1931, covering property in Sedgwick county, Kansas, and do hereby relieve you from any liability by reason of your returning

said deed to me. It is understood that I may destroy said deed or do with it as I may see fit."

On the same day and date, after the receipt of the deed Margaret Kasenberg caused the same deed (conveying the property to Jackman) to be filed for record.

The following day, October 22, 1933, C. M. Jackman died, testate. On January 18, 1935, the executors and trustees under the will of Jackman executed and delivered a quitclaim deed to Grant Kasenberg, the former husband of Margaret Kasenberg.

On September 10, 1935, Margaret Kasenberg filed a voluntary petition in bankruptcy, and September 12, 1935, she was adjudicated a bankrupt.

The plaintiff, the trustee in bankruptcy, in his petition alleges that Margaret Kasenberg became the owner of the property in 1925 and had been the owner, ever since that time, until she was adjudicated a bankrupt; that the deed dated July 15, 1931, was given as security for a loan and was intended as a mortgage only; that the deed was never recorded but returned to Margaret Kasenberg and that she thereafter caused such deed to be placed of record; that the deed from the executors of C. M. Jackman to Grant Kasenberg was without consideration and was intended to convey the naked legal title only; that Grant Kasenberg holds the legal title as trustee for Margaret Kasenberg, and that by the adjudication in bankruptcy Grant Kasenberg has held the title, if any title was at all received, as trustee for the plaintiff, and plaintiff prays that the deed to Jackman and the deed from the executors of Jackman to Grant Kasenberg be canceled and that plaintiff he decreed the owner of the property.

In the answer of Grant Kasenberg it was alleged that prior to February 10, 1922, he and Margaret Kasenberg by their joint efforts had accumulated considerable property; that upon their divorce the defendant was to receive, under a property settlement, the proceeds of their joint accumulations, most of which stood in the name of Margaret, "the sum of ten thousand dollars, either in cash or property"; that after the divorce no division of the property was actually made; that Margaret "continued to own, manage and control their undivided property jointly." The answer recites the purchase of the property in question, and states the title was taken in the name of Margaret; that in 1927 it was orally agreed to discharge their original property settlement and that the defendant was to re-

ceive the property in question as his sole and separate property; that thereupon the defendant moved into said property and has since occupied the same; that since 1927 he has been in the open and notorious possession of the same, made improvements thereon and collected all the rents and profits therefrom. It was alleged that he permitted the use of the property as security to a trust company and to Jackman, and that upon the payment of the loans the equitable title reverted to and vested in him.

The reply of the plaintiff pleads matter by way of estoppel—that defendant allowed the record title to remain in the name of Margaret Kasenberg from the date of its purchase in 1925 until the deed to Jackman was recorded, and that credit was extended to Margaret upon her reputed ownership of the property.

Did the court err in sustaining the demurrer to the evidence?

There is little dispute as to the facts. It is conceded that the deed from Margaret Kasenberg was given as security for borrowed money, and that on October 21, 1933, the deed was returned to Margaret without having been recorded. It is not disputed that on the same date Margaret Kasenberg filed the deed for record. No explanation of this action is found in the record.

One of the executors of the Jackman estate testified that the deed from Margaret Kasenberg to C. M. Jackman was found among the papers of the estate; that in December, 1934, Margaret paid the estate $300, and that on January 18, 1935, the executors executed and delivered the deed to Grant Kasenberg.

Plaintiff contends that as the warranty deed given to Jackman is conceded to be a mortgage, it did not and could not vest title in Jackman. In support of this proposition he relies on *Stark v. Morgan,* 73 Kan. 453, 461, 85 Pac. 567, where it was stated: "A mortgage in this state is not an alienation, but a mere security for a debt; it creates a lien, but vests no title." See, also, *McFall v. Ford,* 133 Kan. 593, 616, 1 P. 2d 273.

It is further urged that as Jackman acquired no title, the quitclaim deed executed by Jackman's executors to Grant Kasenberg was void; that as the debt was not paid the deed, when recorded, continued as a mortgage; that after the debt was paid to the executors their duty was to execute a release of the mortgage to the mortgagor and that as they had no title the deed to Grant Kasenberg vested no right, title or interest in him.

Defendant contends that when Jackman redelivered the deed to

Margaret Kasenberg on October 21, 1933, the security was surrendered; that the deed ceased to be a mortgage securing any indebtedness; that thereupon Margaret Kasenberg was invested with the entire title, both legal and equitable, and the situation was precisely the same as though she had never seen or heard of Jackman. Thereafter she recorded the deed to Jackman. Whatever her motive may have been it is now urged that there is no evidence in the record that the deed was recorded or the title conveyed to Jackman as security for the $300, or any other loan; that the effect of the recording of the deed was to transfer the fee-simple title to Jackman, and that having the fee title the quitclaim deed executed by the executors was effectual to pass the title to Grant Kasenberg.

On the record before us we think the contentions of the defendant must be sustained.

. Although the debt was not paid, the mortgagee Jackman had a lawful right to release the security if he chose to do so. No consideration was necessary. (41 C. J. 803, 804.) The surrender of the deed, while informal, would operate between the parties as an equitable release and no one else could complain. As a result, Margaret Kasenberg held the fee title free from the lien. As such owner she could make any lawful disposition of the property. What effect, then, is to be given to the action of Margaret Kasenberg in recording the deed? As the record is silent as to her motive, we must take the transaction as we find it. Was it effectual to transfer the absolute title to Jackman or was there a resulting trust in favor of the transferor?

There was a time in the history of the common law where if the owner made a feoffment in fee simple to another and no consideration was paid and no express use declared, that a use was held to result in favor of the feoffor. This rule does not apply to the modern law of trusts. Where a transfer of property is made without consideration the inference is that a gift was intended, not that the transferee is to hold the property for the benefit of the transferor. (Restatement, Trusts, § 405.)

It is clear that if the deed was otherwise effective it would pass the fee-simple title. Was there delivery and acceptance?

It is well settled that the recording of a deed constitutes delivery to the grantee. (*Balin v. Osoba,* 76 Kan. 234, 91 Pac. 57; *Carver v. Main,* 146 Kan. 251, 257, 69 P. 2d 681.) Where the deed is in-

tentionally recorded by the grantor manual delivery of the deed thereafter is not necessary to make it effectual. (*Turner v. Close,* 125 Kan. 485, 264 Pac. 1047.) In the absence of express disclaimer acceptance by the grantee is presumed. (*Wuester v.`Folin,* 60 Kan. 334, 56 Pac. 490; *Miller v. Miller,* 91 Kan. 1, 136 Pac. 953.)

As Jackman died seized and possessed of the land, his executors had a right to make the conveyance to Grant Kasenberg, and a quitclaim was sufficient to convey such title. (*Platt v. Woodland,* 121 Kan. 291, 246 Pac. 1017.)

The judgment is affirmed.