No. 44,648

VENA HINCHLIFFE, *Appellant,* v. HELEN EWING FISCHER, FERDINAND STANLEY EWING, and HELEN EWING FISCHER, Executrix of the Will of Mary Ewing, Deceased, *Appellees.*

(424 P. 2d 581)

Opinion filed March 4, 1967.

*Vincent G. Fleming,* of Larned, argued the cause and was on the brief for appellant.

*Walter F. Stueckemann,* of Jetmore, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

FATZER, J.: The question presented is whether the decedent, Mary Ewing, succeeded in effectuating her desire to vest title in the appellees, Helen Ewing Fischer and Ferdinand Stanley Ewing, to a section of land in Hamilton County by a "Private Annuity Contract" she executed during her lifetime, or whether she failed therein and the real estate remained an asset of her estate, entitling the appellant, Vena Hinchliffe, one of the residuary devisees, to share therein.

The appellant will be referred to as Vena; the appellees as Helen and Ferdinand or appellees, and the "Private Annuity Contract" as Contract.

Vena, Helen and Ferdinand are the three children of Mary Ewing, deceased, who lived at Larned. Vena lives at Portland, Texas, Ferdinand lives at Sinton, Texas, and Helen lives at Larned. Mary Ewing's will was duly admitted to probate in Pawnee County, and Helen was named as executrix and duly qualified.

Vena filed her petition in the probate court to draw into the estate as an asset the section of land (Section 29), alleging that Helen, as executrix, failed to list Section 29 in the inventory as being a part of the estate; that her mother, Mary Ewing, deceased, was the owner of the land at her death, and that as a residuary devisee in Article III of her mother's Last Will and Testament, she was the owner of an undivided ⅓ interest therein.

Helen, individually, and as executrix, and Ferdinand claimed ownership of Section 29 as "transferees" in the Contract, executed by the decedent on January 28, 1963, and recorded in Hamilton County on November 26, 1963. The Contract reads:

### "PRIVATE ANNUITY CONTRACT

"THIS AGREEMENT made and entered into this 28th day of January, 1963, by and between MARY EWING, a widow, of Larned, Kansas, hereinafter referred to as the 'TRANSFEROR' and FERDINAND STANLEY EWING, M. D., of Sinton, Texas, HELEN EWING FISCHER, of Larned, Kansas, hereinafter referred to as the "TRANSFEREES,'

"WITNESSETH:

"WHEREAS, the Transferor is the owner of certain land, a list of which is attached hereto, marked 'Schedule A,' and made a part hereof by this reference, and

"WHEREAS, the Transferor, because of the uncertainty of the crops of said land, is desirous of relieving herself from the burden of collecting such income and of the management of the investments, and

"WHEREAS, The Transferor is willing to bargain, sell and transfer to the Transferees all the land listed in Schedule A attached hereto, provided that the Transferees above agree to pay to the Transferor a certain sum annually, as hereinafter set forth, regardless of the value of the investments and property so transferred, and regardless of the amount of the income therefrom received by the Transferees, and

"WHEREAS, the Transferees are willing to agree to make such payment:

"Now, THEREFORE, in consideration of the mutual covenants herein contained, it is agreed as follows:

"(1) *The Transferor hereby bargains, sells and transfers absolutely to the Transferees all of the land set forth in Schedule A and annexed hereto and made a part of this instrument.*

"(2) The Transferees, in consideration of the sale, transfer and delivery of said property, receipt of which is hereby acknowledged, hereby agree to pay

or cause to be paid to the Transferor for and during the full term of her natural life, the sum of $1,600.00 annually, payable in semi-annual payments, said payments may be made at any time during the calendar year.

"(3) If any payment under this contract be not effected by the Transferees, such sum or sums shall accumulate at a rate of interest of six percent (6%) per annum until paid.

"IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

"/s/ Mary Ewing
Mary Ewing, Transferor

"/s/ Ferdinand Stanley Ewing, M. D.
Ferdinand Stanley Ewing, M. D.

"/s/ Helen Ewing Fischer
Helen Ewing Fischer
"Transferees." (Emphasis supplied.)

Schedule A described:

"All of Section Twenty-nine (29), in Township Twenty-three (23), South of Range Forty-one (41), West of the 6th P. M." situated in Hamilton County, Kansas.

The Contract was signed and acknowledged by Mary Ewing and Helen, at Larned, on January 28, 1963, and forwarded to Ferdinand who signed and acknowledged it at Sinton, Texas, on February 7, 1963.

Upon Vena's application, the probate court transferred the proceeding to the district court pursuant to K. S. A. 59-2402a for trial and determination. The district court made findings of fact, and concluded that the Contract was "a good and sufficient conveyance from Mary Ewing to Ferdinand . . . and Helen . . . and that the said Ferdinand . . . and Helen . . . [were] the owners of said real estate," at the time of Mary Ewing's death on December 12, 1963. Thereafter, this appeal was duly perfected.

Vena first contends the Contract was not a deed since it failed to comply with the minimum standards required in K. S. A. 58-2203 and 58-2204 and was ineffective to convey title to Section 29 to the appellees. We do not agree. The pertinent portion of K. S. A. 58-2203 reads:

"Any conveyance of lands, worded *in substance* as follows: A. B. conveys and warrants to C. D. (here describe the premises), for the sum of (here insert the consideration), the said conveyance being dated, duly signed and acknowledged by the grantor, shall be deemed and held a conveyance in fee simple to the grantee, his or her heirs and assigns . . ." (Emphasis supplied.)

K. S. A. 58-2204 reads:

"Any conveyance of lands, worded *in substance* as follows: A. B. quitclaims to C. D. (here describe the premises), for the sum of (here insert the consideration), the said conveyance being duly signed and acknowledged by the grantor, shall be deemed to be a good and sufficient conveyance in quitclaim to the grantee, his heirs and assigns." (Emphasis supplied.)

It is obvious that if a written instrument intending to convey real estate contains words in substance to those of the statute, it is sufficient to convey the property described.

Article 22 of Chapter 58, Kansas Statutes Annotated, relates to conveyances of land. In *Miller v. Miller,* 91 Kan. 1, 136 Pac. 953, the court construed Section 3 of Chapter 22 of the General Statutes of 1868, which is the same as K. S. A. 58-2205, and stated that the purpose of the statute was to make the transfer of interest in land as free as possible.

In *Bryant v. Fordyce,* 147 Kan. 586, 78 P. 2d 32, it was held:

"It is not necessary to the validity of a deed that technical operative words of conveyance be used. The use of the words 'assign and set over' indicates an intention by the grantor to transfer property to the grantee." (Syl. ¶ 2.)

In *Knutson v. Hederstedt,* 125 Kan. 312, 264 Pac. 41, it was held that a written instrument entitled "Assignment" which was signed and acknowledged by the grantor containing the operative words of "sell, assign, transfer and deliver" were sufficient to pass title to the grantor's future interest in real estate.

In the instant case, the Contract contains all essential elements necessary to convey Mary Ewing's interest in the real estate to the appellees when measured by the requirements of our statutes. The parties were sufficiently designated and identified; the Contract was based upon ample consideration; it not only purported to transfer the land, but the property was accurately identified by governmental description; it contained operative words of grant, that the transferor "hereby bargains, sells and transfers absolutely" to the transferees, and it was signed and acknowledged by all the parties. We think Mary Ewing's present and existing interest passed to the appellees by the fair import of the language of the Contract, and vested in them fee simple title to Section 29.

Vena contends that the additional words which characterize the instrument as an annuity contract destroys the effect of the grant. We do not agree. In many conveyances of real estate, the consideration for the transfer is some form of maintenance and support of the grantor. Deeds in such cases recite at length the various condi-

tions and duties of the support. (*Anderson v. Gaines,* 156 Mo. 664, 57 S. W. 726; *Widen v. Widen,* 33 Ohio App. 37, 168 N. E. 477; *Martin v. Martin,* 44 Kan. 295, 24 Pac. 418.)

It is not unusual that the substance, and also the wording, of instruments conveying real property resemble an annuity contract, and it has been held there is no destruction of the effectiveness of the grant. In *Christian v. Ross,* 145 Ga. 284, 88 S. E. 986, there was a direct requirement for a certain amount of monthly payments, and in *Sloan v. Frothingham,* 72 Ala. 589, the property was conveyed for a consideration directly stated to be "an annuity on the land granted." The fact that the Contract in the instant case served a dual purpose, that is, to transfer and convey Section 29 to the appellees, and imposed upon them the duty to pay an annual annuity to their mother in the amount stated, did not destroy the effectiveness of the grant.

Vena further contends the grant of the land in question was not effective because there was no delivery of the Contract. The record does not support the contention. Before a deed can operate as a valid transfer of title, there must be delivery of the instrument which becomes effective during the lifetime of the grantor. *Reed v. Keatley,* 187 Kan. 273, 356 P. 2d 1004; *In re Estate of Loper,* 189 Kan. 205, 368 P. 2d 39.) In the instant case several facts show delivery. On January 28, 1963, Mary Ewing, grantor, and Helen, one of the grantees, signed and acknowledged the Contract and mailed it to Ferdinand, at Sinton, Texas. On February 7, 1963, Ferdinand had the completed contract in his possession, which constituted a valid delivery. Moreover, the Contract expressly stated that Helen and Ferdinand, the transferees, "in consideration of the sale, transfer and delivery of said property, *receipt of which is hereby acknowledged,* do agree . . ." (Emphasis supplied), and we think this is further evidence of Mary Ewing's intention to effect a valid delivery of the deed. It has been held the mere possession of a deed by the grantee is *prima facie* evidence of delivery which can be overthrown only by clear and convincing evidence. (*Rohr v. Alexander,* 57 Kan. 381, 46 Pac. 699.) Other evidence of delivery is that the Contract was recorded on November 26, 1963. It has also been held that the recording of a deed constitutes delivery to the grantee. (*Fooshee v. Kasenberg,* 152 Kan. 100, 103, 102 P. 2d 995.) It is established that where there has been a showing of either possession of the signed deed by the

grantee or its recording, there is a *prima facie* presumption of delivery, and the burden of proof is on the party questioning delivery.

In the instant case, Vena offered no evidence that the Contract was not delivered or when it was intended by Mary Ewing to become effective. The burden of proof was upon her and there inheres in the district court's conclusion of law and judgment that Helen and Ferdinand "are the. owners of said real estate," that the deed was effectually delivered by the decedent to the appellees in her lifetime.

Other points have been raised by Vena, which have been carefully considered, but they are without merit and it is unnecessary to discuss them.

We conclude there was ample evidence to support the district's court's finding that the Contract was a good and sufficient conveyance from Mary Ewing to Helen and Ferdinand and that the appellees are the owners of said real estate.

The judgment is affirmed.