NOT DESIGNATED FOR PUBLICATION

No. 115,583

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PAUL ELLIOTT WISE and DAVID N. MCNEES, Co-Executors of the Estate of MARILYN
JANET WISE,
*Appellants*,

v.

ROBERT L. BAILEY, SR., and BETTY HOOKS BAILEY,
*Appellees*.

MEMORANDUM OPINION

Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed June 16, 2017.
Affirmed.

*Terence E. Leibold*, of Petefish, Immel, Heeb & Hird, LLP, of Lawrence, for appellants.

*Paul T. Davis*, of Fagan Emert & Davis, L.L.C., of Lawrence, for appellees.

Before STANDRIDGE, P.J., MCANANY, J., and HEBERT, S.J.

*Per Curiam*: This is an action brought by the coexecutors of the Estate of Marilyn
Janet Wise (plaintiffs), to determine the rights and interests of certain family members to
surface and mineral interests in real estate located in Franklin County and Kiowa County,
Kansas. The district court granted summary judgment in favor of Robert L. Bailey, Sr.,
and Betty Hooks Bailey (defendants) on grounds that Marilyn and Robert had entered
into a valid family settlement agreement that set forth their rights and interests in the real
estate. On appeal, the plaintiffs argue that the family settlement agreement is
unenforceable because: (1) it is an executory contract, (2) it was not approved by the

1

district court, and (3) the statute of limitations to enforce the agreement has expired. In our de novo review, we also conclude the defendants were entitled to summary judgment; thus, we affirm the district court's decision to enter summary judgment in their favor.

FACTS

Elfie M. Bailey died on May 22, 2002. She was survived by her two children, Marilyn Janet Wise and Robert L. Bailey, Sr. At the time of her death, Elfie owned two tracts of real property, one in Franklin County and one in Kiowa County. Elfie's Last Will and Testament, dated March 29, 1988, named Marilyn as the executor and sole beneficiary.

In order to avoid the time and expense of probate, Marilyn and Robert entered into a family settlement agreement on November 19 and 20, 2002, which set forth the disposition of Elfie's assets in lieu of admitting her will to probate. In the agreement, the parties acknowledged the terms of Elfie's will, their familiarity with Elfie's property, and their opportunity to seek independent legal counsel prior to execution of the agreement. The agreement provided, in relevant part:

> "1. The Last Will and Testament of Elfie M. Bailey dated March 29, 1988, will not be offered for probate in the District Court of Douglas County, Kansas, or elsewhere and each of the parties holds the other harmless for the withholding of such Will from probate. This agreement is intended to divide and distribute decedent's property for all purposes regardless of the provisions of the Will dated March 29, 1988, or any other testamentary disposition of property that may be discovered later.
> "2. The parties acknowledge and agree that they have heretofore divided and distributed all of decedent's tangible personal property between themselves to their mutual satisfaction.
> "3. Except as otherwise herein specifically provided, all checking, savings and other bank accounts, certificates of deposit, investment accounts, KPERS death benefits and all other intangible property owned by the decedent at the time of her death, whether

2

individually or as joint tenants with right of survivorship with either or both of the parties to this agreement, will be the sole and separate property of Marilyn free and clear of any claim of right, title or interest in Robert.

"4. Subject to the provisions of paragraph 5, the following described real estate will be set aside to Robert:

Tract No. 1:

[Legal description of Franklin County real estate]

and

Tract No. 2:

[Legal description of Kiowa County real estate].

"5. All mineral and oil and gas interests in and to all real estate described in said paragraph 4, and all right, title and interest of the decedent in oil and/or gas leases and royalty agreements and royalty working interests related to said tracts of real estate will be set aside to Marilyn.

"6. All farm income and expenses related to the real estate described in paragraph [4] above will be assigned to Robert as of the date of death of the decedent including responsibility for the second half of 2001 real estate taxes and all 2002 real estate taxes.

"7. Each party covenants and agrees with the other to fully cooperate in the execution and delivery of deeds of conveyance and all other documents reasonably necessary to carry out the provisions and intent of this agreement.

"8. If a gift tax return or returns are required as a result of the transfers called for in this agreement, Robert will pay the cost of preparing such gift tax returns, and he will also pay and hold harmless Marilyn from the payment of all costs and fees associated with determination of descent proceedings, title work, [attorney] fees, assignment of farm leases and all other costs associated with carrying out the terms of this agreement.

"9. The parties may each sign separate copies of this agreement which shall, in combination, constitute a single agreement and this agreement shall not require the approval of any court in order to be effective and binding on the parties.

"10. It is agreed that all of the covenants and agreements herein contained shall extend to and be binding upon the heirs, executors, administrators, successors and assigns of the respective parties."

On December 17, 2002, Marilyn's attorney, Jeffrey O. Heeb, mailed Robert the deeds to the Franklin County and Kiowa County real estate referenced in paragraph 7 of

the family settlement agreement and requested that Robert sign and return the deeds. Robert did not return the deeds to Heeb.

Because Elfie's will was not admitted to probate, Marilyn instead filed a petition for determination of descent in the Douglas County District Court. On February 4, 2003, the district court issued a decree of descent, which declared that Marilyn and Robert were the lawful heirs of Elfie's estate. Noting that no will had been admitted to probate, the decree declared that, pursuant to the laws of intestate succession, Marilyn and Robert were each entitled to an undivided one-half interest of the Franklin County and Kiowa County property, "subject to any lawful disposition heretofore made." The decree was recorded in Franklin County and Kiowa County.

Heeb later sent a letter to Marilyn and Robert, which stated that based on a prior conversation with Marilyn, he understood the parties would "work out the deed arrangements directly between [themselves]." On April 24, 2003, Marilyn delivered to Robert a deed conveying her surface interest in the Franklin County property, while reserving her right to ownership of the mineral interests in the property. Robert subsequently recorded this deed and the decree of descent with the Franklin County Register of Deeds. No deeds were ever recorded setting forth Robert's surface interest in the Kiowa County property, Marilyn's mineral interests in the Kiowa County property, or Marilyn's mineral interests in Robert's portion of the Franklin County property.

In July 2003, Robert recorded with the Kiowa County Register of Deeds an unsigned draft of the family settlement agreement that differed from the final version that the parties had signed. In May 2009, Marilyn recorded the signed final version of the family settlement agreement with the register of deeds in Franklin County and Kiowa County.

4

Marilyn died on April 18, 2014. On March 23, 2015, the plaintiffs filed a petition which sought to quiet title in the Franklin County and Kiowa County properties in accordance with the decree of descent, which had declared that Marilyn and Robert were each entitled to an undivided one-half interest in the properties. The plaintiffs also sought rescission of the Franklin County surface deed signed by Marilyn and recorded by Robert in 2003. The defendants' answer asserted, in part, that the family settlement agreement had modified the decree of descent and should therefore control.

Both parties moved for summary judgment. Relevant here, the plaintiffs alleged that title should be quieted according to the decree of descent because: (1) the family settlement agreement did not transfer any interest to the property at issue because the parties never recorded the deeds that were required to implement the transfer of ownership between the parties and (2) the statute of limitations to enforce the family settlement agreement and to bring a claim against Marilyn's estate had expired. Conversely, the defendants argued that the family settlement agreement was valid and asked the court to use its equitable powers to enforce the agreement.

After hearing argument on the parties' motions, the district court granted summary judgment in favor of the defendants and ordered specific performance of the family settlement agreement. Specifically, the district court held that the statute of limitations did not apply to prevent enforcement of the agreement. The court then concluded:

> "The Court believes that the family settlement agreement that was executed could constitute a contract that would serve to transfer title to the real estate. It had all the necessary elements. Although one paragraph in the family settlement agreement refers to the fact that the parties are to cooperate in the execution of whatever documentation or deeds are necessary to effectuate the terms of the agreement that does not mean that the agreement itself could not also be utilized as the granting document."

5

STANDARD OF REVIEW

This court's standard of review on summary judgment is well known.

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015).

An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013); *Sanchez v. U.S.D. No. 469*, 50 Kan. App. 2d 1185, 1192, 339 P.3d 399 (2014), *rev. denied* 302 Kan. 1011 (2015).

In addition, resolution of the issues raised in this appeal requires interpretation of the family settlement agreement. The interpretation and legal effect of written instruments are matters of law over which appellate courts have unlimited review. *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016); see *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001) ("Regardless of the construction

6

given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect.").

## ANALYSIS

The district court granted summary judgment in favor of the defendants based on its finding that the family settlement agreement constituted a valid contract sufficient to transfer title to the Franklin County and Kiowa County real estate. The plaintiffs allege that the district court's decision was improper because the family settlement agreement is unenforceable and therefore title to the real estate should follow the decree of descent. Thus, resolution of this appeal rests on whether the family settlement agreement was valid and, if so, whether it properly transferred title to the Franklin County and Kiowa County real estate.

"[F]amily settlement agreements are favorites of the law and when fairly made, are to be given liberal interpretation and should not be disturbed by those who entered into them or by those claiming under or through them." *In re Estate of Thompson*, 226 Kan. 437, 441, 601 P.2d 1105 (1979).

> "The theory upon which family settlements are upheld is that they tend to prevent litigation between heirs which is so often wasteful and which engenders such bitter feeling between people who should have a tender regard for each other. The desire that family harmony should not be destroyed by an unequal distribution provided by will has been held sufficient consideration to support a family settlement. They have been said to be favorites of the law." *Mills v. Purdy*, 142 Kan. 133, 135-36, 45 P.2d 1049 (1935).

Family settlement agreements are contractual in nature. To be valid, a family settlement agreement must be in writing and acknowledged and approved by "all interested heirs, devisees, legatees and persons whose interests are affected by the settlement agreement, all of whom must be competent or authorized to enter into such

agreement." K.S.A. 59-102(8); see *In re Estate of Leathers*, 19 Kan. App. 2d 803, 803-04, 876 P.2d 619 (1994). "'[T]he mutual promises of the contracting parties' provide sufficient consideration for the agreement." *Butts v. Lawrence*, 22 Kan. App. 2d 468, 471, 919 P.2d 363 (1996). There is no dispute that the family settlement agreement in this case was a valid contract.

Having determined the family settlement agreement was a valid contract, we now must decide whether it properly transferred title to the Franklin County and Kiowa County real estate. The transfer of real property in Kansas is governed by K.S.A. 58-2201 *et seq*. Title to real property must be conveyed in writing. K.S.A. 33-106. The writing usually takes the form of a deed. See K.S.A. 58-2205. In order for a contract to legally transfer title to real estate absent a deed, the contract must contain all the essential elements necessary to convey land pursuant to a deed, *i.e.*, the parties must be sufficiently designated and identified, the contract must be based upon ample consideration, the property must be accurately identified by governmental description, the contract must contain operative words of grant, and the instrument must be signed and acknowledged by all the parties. See K.S.A. 58-2203 (setting forth requirements for valid warranty deed); K.S.A. 58-2204 (setting forth requirements for valid quitclaim deed); *Hinchliffe v. Fischer*, 198 Kan. 365, 368, 424 P.2d 581 (1967) ("[I]f a written instrument intending to convey real estate contains words in substance to those of the statute, it is sufficient to convey the property described."); *Bryant v. Fordyce*, 147 Kan. 586, 590, 78 P.2d 32 (1938) (holding that use of technical operative words of conveyance are not necessary; words that express intention to transfer property may be sufficient).

When interpreting a written contract, the primary rule is to ascertain the parties' intent. If the terms of the contract are unambiguous, the parties' intent is to be ascertained from the contract language without applying rules of construction. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014); *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

"'"In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided. The meaning of a contract should always be ascertained by a consideration of all pertinent provisions and never be determined by critical analysis of a single or isolated provision.'" [Citations omitted.]" *In re Estate of Einsel*, 304 Kan. 567, 581, 374 P.3d 612 (2016).

Applying the above cited rules of interpretation and generally recognized statutory requirements, we find the family settlement agreement was sufficient to transfer title to the real estate. The agreement clearly identified the parties; there was ample consideration with each party promising to convey certain rights to the other; the property at issue was accurately identified by governmental description; the agreement contained sufficient granting language; and it was properly signed and acknowledged by the parties.

But as set forth above, the plaintiffs allege the family settlement agreement was unenforceable because: (1) it was an executory, rather than executed, contract; (2) it was never approved by the district court pursuant to K.S.A. 59-2249(a); and (3) the statute of limitations for its enforcement had expired. The plaintiffs also argue that the district court should have rescinded the Franklin County surface deed signed by Marilyn and filed by Robert in 2003 on grounds of unjust enrichment. We address each of these allegations in turn.

### 1. *Executory contract*

The plaintiffs allege the family settlement agreement is unenforceable because it is an executory contract. An executory contract is a contract the conditions or promises of which have not been fully performed; in other words, one party or both have something yet to perform. See *Wagstaff v. Peters*, 203 Kan. 108, 113, 453 P.2d 120 (1969) ("[A]n executory contract is distinguished from an executed contract as one where some future act is to be done."); Black's Law Dictionary 393 (10th ed. 2014) (defining an executory

9

contract as "[a] contract that remains wholly unperformed or for which there remains something still to be done on both sides"); see also *Misco Industries, Inc. v. Board of Sedgwick County Comm'rs*, 235 Kan. 958, 965, 685 P.2d 866 (1984) (describing an executory contract for purchase of real estate as one where seller holds legal title to property as security for the unpaid purchase price; buyer only obtains title after completing payments required under the contract).

The plaintiffs contend that the language of the family settlement agreement establishes that Marilyn and Robert did not have the present intent to convey the surface and mineral rights to the Franklin County and Kiowa County real estate. Specifically, the plaintiffs claim that language used in paragraphs 4, 5, and 7 of the agreement makes clear that the parties intended to exchange deeds in order to effectuate the transfer of property rights. The plaintiffs note that the agreement does not use the word "hereby" prior to the language of conveyance or otherwise use the present tense; instead, the language in paragraphs 4 and 5 provides that the surface and mineral rights "will be set aside," indicating a conveyance at some point in the future. To that end, the plaintiffs point to the language in paragraph 7 regarding "the execution and delivery of deeds of conveyance and all other documents reasonably necessary to carry out the provisions and intent of this agreement" to suggest that the conveyance of the property would only occur upon the execution and delivery of the deeds. The plaintiffs argue that the district court's ruling renders the language of paragraph 7 meaningless.

As additional support for their claim that the family settlement agreement is unenforceable as an executory contract, the plaintiffs rely on *Montoya v. Romero*, No. 28,673, 2011 WL 2042404 (N.M. Ct. App. 2011) (unpublished opinion), as persuasive out-of-state authority. *Montoya* involved a partition action relating to a joint tenancy. Following arbitration, the parties reached a settlement agreement. The New Mexico Court of Appeals held that the settlement agreement did not effect a partition of the land at the time it was executed, given that it conditioned the partition upon the following:

10

"1. The parties will retain [a surveyor] to survey the subject real property into three (3) lots of eight (8) acres each, one (1) lot of five (5) acres, one lot of four (4) acres and one (1) lot of two (2) acres.

"2. One (1) eight-acre lot shall be the northern most portion of the property, with the southern boundary to be as close to a ninety (90) degree angle to the eastern boundary of this eight-acre tract as reasonably practicable.

"3. The lot described in the preceding paragraph will be awarded to [Plaintiff].

"4. The remaining five (5) lots will be surveyed in accordance with and upon the mutual agreement of [Defendants]. . . [.]

. . . .

"6. Each of the parties and his or her spouse will quitclaim the lot the party to which it is awarded in the [a]rbitration [a]ward.

"7. The surveyor shall create along the entire length of the western boundary of the subject real property (including the lot awarded to [Plaintiff]) an easement for ingress and egress. . . [.]

"8. The [s]urvey shall be recorded and approved in accordance with applicable law.

"9. The costs of surveying, recording and obtaining approval of the plat of survey shall be borne by the parties in relation to the pro rata interests awarded to them.

"10. Upon the satisfaction of the terms and provisions set forth above, the parties . . . will execute [r]eleases and any and all other documents as may be reasonable and necessary in order to . . . effectuate the terms and provisions of this [s]ettlement [a]greement." 2011 WL 2042404, at *1-2.

The plaintiffs' reliance on *Montoya* is misplaced. In addition to the requirement that the parties exchange quitclaim deeds, the agreement in that case very clearly indicated an intent that the partition only occur after very specific conditions related to a survey of the property had been met. Here, there is no language in the agreement stating that certain conditions must be met before the real estate's surface and mineral rights would vest in Robert and Marilyn. Rather, the agreement describes the parties' present intent to divide the surface and mineral rights and indicates that they would work together to effectuate deeds to carry out that intent. The agreement's stated purpose reflects the parties' "wish and desire . . . to agree upon the specific disposition of decedent's assets."

11

The agreement goes on to expressly state: "This agreement is intended to divide and distribute decedent's property for all purposes . . . ." The parties used the words "will be" to describe the division of property in paragraphs 4 and 5, but also used that same language to describe the allocation of Elfie's financial accounts in paragraph 3, as well as Robert's obligations in paragraph 8 to pay the tax returns and attorney fees. The context in which this language is used throughout the agreement indicates that the parties were not waiting for some future event to occur prior to the agreement becoming effective.

Although the parties may have intended that the conveyance of the real estate be formalized through the execution of deeds, it does not mean that they did not intend for the conveyance to occur upon execution of the family settlement agreement. "'The fact that the parties contemplate the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply they have not already bound themselves to a definite and enforceable contract.' [Citation omitted.]" *O'Neill v. Herrington*, 49 Kan. App. 2d 896, 905, 317 P.3d 139 (2014) (affirming district court's enforcement of settlement agreement reached over e-mail where one party later failed to sign the formal written agreement). As explained by our Supreme Court, "'[t]he matter is merely one of expressed intention. If [the parties'] expressions convince the court that they intended to be bound without a formal document, their contract is consummated, and the expected formal document will be nothing more than a memorial of that contract.'" *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 735-36, 512 P.2d 379 (1973) (quoting 1 Corbin on Contracts, § 30, p. 98). The parties expressed an intent to be bound by the family settlement agreement, which set forth all material terms relating to the real estate transfer. Execution of the deeds was not an essential element of the parties' agreement; they were nothing more than a formalization of the agreement.

The plaintiffs also assert that the conduct after signing the family settlement agreement lends support to their claim that the parties only intended to transfer title to the real estate upon the execution of deeds. But when the terms of the contract are clear, the

court must look only to the four corners of that instrument when ascertaining the parties' intent. *Carrothers Constr. Co. v. City of South Hutchinson*, 288 Kan. 743, 751, 207 P.3d 231 (2009). Accordingly, "[u]nambiguous contracts are enforced according to their plain, general, and common meaning in order to ensure the intentions of the parties are enforced." *Johnson County Bank v. Ross*, 28 Kan. App. 2d 8, 10, 13 P.3d 351 (2000). Therefore, we decline the plaintiffs' invitation to review the parties' postagreement conduct. As previously discussed, the plain and unambiguous terms within the family settlement agreement itself readily establish that the parties intended to convey title to the real estate at the time they signed the agreement.

### 2. *No approval by the district court*

The plaintiffs allege that even if the family settlement agreement expressed a present intent to convey the real estate, the conveyance was not valid because the agreement was never approved by the district court as required to effectuate the agreement under K.S.A. 59-2249(a).

K.S.A. 59-2249(a) is part of the Kansas Probate Code and governs hearings on petitions for final settlement and decrees of final settlement. Contrary to the plaintiffs' assertion that the parties' family settlement agreement required district court approval under this statute in order to effectuate the agreement, such approval is only necessary to obtain a decree of final settlement and an assignment of property in accordance with its provisions. See *Butts*, 22 Kan. App. 2d at 471. Here, the parties entered into the family settlement agreement in order to avoid the expense of probate. In this case, the parties obviously agreed beforehand that a decree of final settlement was not necessary, as the family settlement agreement itself expressly and specifically provided that it did "not require the approval of any court in order to be effective and binding on the parties." Instead, Marilyn filed a petition for determination of descent in the Douglas County District Court. The court subsequently issued a decree of descent declaring Marilyn and

13

Robert were each entitled to an undivided one-half interest of the Franklin County and Kiowa County properties, "subject to any lawful disposition heretofore made." Both the decree of descent and the family settlement agreement were recorded in Franklin County and Kiowa County. As a matter of public record in both counties, then, the decree of descent was subject to the family settlement agreement and no further action needed to be taken in order to transfer title to the real estate in Franklin County and Kiowa County real estate.

3. *Statute of limitations*

The plaintiffs argue that even if we find the family settlement agreement to constitute a valid transfer of title to the Franklin County and Kiowa County real estate, it cannot be enforced because neither party ever attempted to do so in a timely manner. Specifically, the plaintiffs contend that the 5-year statute of limitations to enforce a contract has expired and that Robert did not otherwise attempt to enforce the family settlement agreement by bringing a claim against Marilyn's estate within 6 months of her death, pursuant to K.S.A. 59-2239(1). The interpretation and application of a statute of limitations is a question of law over which appellate courts have unlimited review. *Smith v. Graham*, 282 Kan. 651, 655, 147 P.3d 859 (2006).

The statute of limitations for a contract claim is 5 years. K.S.A. 60-511(1). A cause of action for breach of a written contract accrues at the time of the breach, regardless of when the breach is discovered or is discoverable. *Dunn v. Dunn*, 47 Kan. App. 2d 619, 628, 281 P.3d 540 (2012). The plaintiffs alleged below that the statute of limitations barred enforcement of the family settlement agreement because the parties failed to sign the deeds conveying their ownership interests in the real estate within 5 years of signing the agreement on November 19 and 20, 2002. The district court rejected this argument, holding that the 5-year statute of limitations did not begin running on

14

November 20, 2002, and concluding that it could only begin running upon some sort of violation of the agreement, which did not occur in this case.

On appeal, the plaintiffs make a new argument, claiming that the cause of action for enforcing the family settlement agreement accrued on November 19, 2007, based on the parties' failure to exchange deeds within a "reasonable time," *i.e.*, 5 years after signing the agreement. Thus, the plaintiffs argue that the statute of limitations expired by November 19, 2012, more than 2 years before the plaintiffs filed their petition and the defendants filed their answer.

The plaintiffs' argument fails for multiple reasons. First, the plaintiffs did not present this specific argument below. Generally, issues not raised before the district court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, but the plaintiffs do not acknowledge their failure to raise this theory below or otherwise cite one of these exceptions that would warrant our review of the issue. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008). Kansas Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34) requires an appellant to explain why an issue was not raised below and why it should be considered for the first time on appeal. Parties who fail to comply with this rule risk a ruling that the issue is improperly briefed and will be deemed waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). Our Supreme Court has held Rule 6.02(a)(5) is to be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

But even if the plaintiffs had properly preserved this issue below, they are still not entitled to relief because their argument misinterprets the applicability of the statute of limitations to this case. A statute of limitations sets forth a time period within which certain causes of action must be brought. Despite the plaintiffs' attempt to characterize the

15

present case as "Robert's claim to enforce the Family Settlement Agreement," the defendants did not file this lawsuit. Rather, the plaintiffs filed suit to quiet title to the real estate. In response, the defendants requested that the district court use its equitable powers to order specific performance of the family settlement agreement. The defendants' request for specific performance of the agreement as a remedy does not implicate the statute of limitations or K.S.A. 59-2239(1). But even if it did, the statute of limitations would not bar enforcement of the family settlement agreement in this case because there has been no breach of the agreement. Based on the analysis set forth above, the parties' failure to exchange deeds did not constitute a breach of the agreement, as the execution of the deeds was not an essential element of the parties' agreement and instead constituted a mere formality of the terms already set forth therein.

In a related argument, the plaintiffs assert that the district court erred in ordering specific performance of the family settlement agreement because the defendants did not file a counterclaim seeking specific performance or raise it as an affirmative defense in their answer to the plaintiffs' petition prior to requesting this relief in their motion for summary judgment.

This argument also fails. Specific performance is a remedy, not a claim that must be set forth as a counterclaim pursuant to K.S.A. 2016 Supp. 60-213(a). Nor is specific performance listed in K.S.A. 2016 Supp. 60-208(c)(1) as an affirmative defense that must be asserted in a responsive pleading. The plaintiffs' argument also ignores the fact that regardless of whether a party requests specific performance as a remedy, it may also be imposed by the court in the exercise of its equitable powers. The plaintiffs originally brought suit as an action to quiet title, which is an action in equity. "Courts of equity, having acquired jurisdiction of the parties and the subject matter of the suit, have the inherent power to make all necessary orders, decrees and judgments so as to settle the matters in controversy and thus prevent future litigation." *National Reserve Life Ins. Co. v. Hand*, 190 Kan. 180, 185, 373 P.2d 194 (1962). "A court of equity is not obliged to

16

render the specific relief prayed for but may make such a decree as justice demands, under all the facts and circumstances as revealed by the evidence." *George v. W-G Fertilizer, Inc.*, 205 Kan. 360, 366, 469 P.2d 459 (1970). "Ordinarily, one who invokes the aid of equity must be prepared to accept its liabilities as well as its benefits." 205 Kan. at 364.

4. *Rescission of Franklin County deed*

Finally, the plaintiffs raise several arguments relating to the district court's failure to rescind the Franklin County surface rights deed executed by Marilyn and recorded by Robert in 2003. Given the conclusion reached above that recording the family settlement agreement in conjunction with the decree of descent (which by its very terms was subject to the terms of the family settlement agreement) was sufficient to transfer the parties' property rights, it is unnecessary to address the plaintiffs' arguments on this point.

CONCLUSION

The uncontroverted facts in the record demonstrate that Marilyn and Robert entered into a valid family settlement agreement that was sufficient to transfer title to the Franklin County and Kiowa County real estate. As a result, the defendants are entitled to judgment as a matter of law. The district court properly granted summary judgment in their favor.

Affirmed.